# Clara H. Woodward, Appellee, v. James Donovan, Appel= lant.

## Gen. No. 16,086.

1. EVIDENCE—*when right to recover upon written instrument prima facie established.* Where there is no issue made by the pleadings as to the validity or *bona fides* of the instrument sued on or the considera- tion on which it is based or the right of the party to sue, the intro- duction in evidence of such instrument, regular on it face, shows *prima facie* the right of the party suing thereon to recover.

2. EVIDENCE—*what proof of title to written instrument.* The mere possession of a promissory note or bond is *prima facie* evidence of the legal title to the instrument and the right of the one in possession to sue thereon, and in the case of an instrument of that character made payable to some person other than the one in possession the presumption arising from possession is that the one in possession may sue thereon in the name of the person to whom it is made payable.

3. PRINCIPAL AND AGENT—*presumption of authority of attorney.* An attorney of record who has possession of a promissory note and who brings suit thereon is presumed to have authority from the payee of the note to conduct such suit. ,

4. PRESUMPTIONS—*as to existence of plaintiff or complainant.* The presumption of the authority of an attorney to act for a party in bring- ing a suit in the name of such party necessarily carries with it the pre- sumption of the existence of such party.

5. PRESUMPTIONS—*as to performance of official duties.* In the ab- sence of proof to the contrary it is presumed that a public officer has done his duty.

6. CHATTEL MORTGAGES—*when prima facie valid.* If a chattel mort- gage provides for the retention of the mortgaged property by the mort- gagor and it is made, acknowledged and recorded as provided by stat- ute, it is *prima facie* valid as to the creditors of the mortgagor, and proof of the *bona fides* of the transaction is not necessary in the first instance.

7. CHATTEL MORTGAGES—*when acknowledgment sufficient.* The ac- knowledgment of a chattel mortgage before a duly qualified deputy clerk of the municipal court who signs the name of the clerk of such court and attaches the seal of such court to a proper certificate is a sufficient compliance with the statute, even though he does not affix his own name as deputy to the certificate after the name of his principal.

· 8. CHATTEL MORTGAGES—*what does not affect sufficiency of acknowl- edgment.* In the absence of proof that no memorandum by the deputy

taking an acknowledgment of a chattel mortgage was made as required by statute the presumption will prevail that a proper memorandum was made.

9. CHATTEL MORTGAGES—*effect of failure of clerk to make memorandum.* Even if the clerk of the municipal court fails in his duty to make a memorandum required by statute the rights of the mortgagor who had no control over the clerk cannot be prejudiced by such failure if the mortgage is in proper form and is recorded.

10. CHATTEL MORTGAGES—*when lien superior to that of distress warrant.* If a chattel mortgagee has not exercised his election to foreclose upon default in payment of one of several instalments his lien is not lost if the last instalment has not matured when a distress warrant is levied upon the property remaining in the possession of the mortgagor pursuant to the terms of the mortgage.

11. CHATTEL MORTGAGES—*when finding that property mortgaged was not household property, not disturbed.* If the finding of the master confirmed by the court to the effect that the property covered by the mortgage was not household property is not manifestly against the weight of the evidence it will not be disturbed on appeal.

12. MUNICIPAL COURT—*how acts of deputy clerk to be performed.* When any act is performed by a deputy the authority to do which he has solely by reason of the fact that he is such deputy, the act may always be done and usually must be done in the name of his principal, and where the act done is the signing of some instrument and the deputy signs the name of his principal the act is the act of the principal and binds him and all the parties concerned as fully as if it had been signed by the principal, even though the name of the deputy actually signing it is not added.

13. DECREES—*when newly discovered evidence not ground for setting aside.* If the alleged newly discovered evidence is cumulative in character and not of a controlling effect, it will not justify the setting aside of the decree rendered.

Bill in chancery. Appeal from the Circuit Court of Cook county; the HON. P. W. GALLAGHER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed February 14, 1912.

W. D. BLACK, for appellant; C. D. F. SMITH, of counsel.

CLARK & CLARK, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

On April 27, 1908, appellant, claiming that one Nellie
D. Driver, otherwise called Nellie D. Smith, owed him
$3,500 for rent past due for premises owned by him
and occupied by her, known as No. 101 Cass street in
the city of Chicago, issued his distress warrant and
took possession under it of a large amount of personal
property belonging to her.

On July 31, 1908, appellee filed her bill in chancery
in the Circuit Court against Nellie D. Smith, the Amer-
ican Trust and Savings Bank, trustee of Nellie D.
Smith, and appellant, wherein she alleges that Nellie D.
Smith, then Nellie D. Driver, on October 15, 1907, being
indebted to appellee for money that day loaned to her
in the sum of $1,800, executed and delivered to appellee
her promissory note for that amount, payable in install-
ments of various amounts and due respectively on the
15th day of the months of November and December,
1907, and January, February, March, April, May, June
and July, 1908, and on the same day made, executed,
acknowledged and delivered to appellee a chattel mort-
gage on the property therein described to secure the
payment of the note; that appellee was the legal owner
and holder of that note; that the mortgagor was in
default in all the payments except the first two, which
had been paid; that appellant had seized the property
described in the mortgage and was then in possession
of the same under some claim of right; that whatever
that claim of right was it was subordinate to the rights
of appellee under the mortgage.   The prayer of the bill
asks that the mortgage be foreclosed and the property
sold to satisfy the balance due on the note.

Appellant answered this bill setting up his interest
in the property by virtue of his relation to Nellie D.
Driver as her landlord; setting up the lease and the in-
debtedness accrued and due him thereunder for rent;
setting up his distress proceedings and denying the
rights of complainant under the mortgage as against
him.   The other defendants also answered the bill, but

there is nothing in their answers material to the issues presented here. The cause was referred to a master in chancery to take the evidence and report his conclusions. The master found the issues for complainant and that she was entitled to a foreclosure of her mortgage and to have the property sold and the mortgage debt paid out of the proceeds of such sale. From this decree James Donovan alone appealed.

Appellant claims the decree was not warranted, because there is no evidence that the complainant was a real person then in existence; because there was no evidence outside of the note and mortgage that at the time the same were given Nellie D. Driver was indebted to complainant, or that the same were *bona fide;* because the mortgage was not acknowledged before the clerk of the Municipal Court as it purports to have been; because the mortgage was acknowledged before a deputy clerk of the Municipal Court, and such deputy did not certify to that fact under his own name and his own seal, but did sign the name of the clerk of the Municipal Court and did attach the seal of that court; because there is no evidence that the officer who took the acknowledgment entered in his docket or book kept for that purpose the memorandum required by statute; because the evidence shows that when the note and mortgage were executed, Nellie D. Driver was a married woman; that the goods mortgaged were household goods then in use as such in their dwelling which was rented by her from appellant; that she was in arrears $3,500 in her rent; that appellant had taken possession of the mortgaged property under a distress warrant for the purpose of collecting the rents due; and because, if the mortgage was valid, the mortgagee had waived her right to foreclose the same as against appellant by failing to take possession of the same upon default being made in the payment of the installment due January 15, 1908.

In a suit in chancery to foreclose a mortgage or in

a suit at law on a promissory note, where there is
no issue made by the pleadings, as to the validity or
*bona fides* of the instrument or the consideration on
which it is based or the right of the party to sue, the
introduction in evidence of the instruments or instru-
ment sued on, regular on the face, shows *prima facie*
the right of the party suing thereon to recover. Brown
v. McKay, 151 Ill. 315; Boudinot v. Winter, 190 Ill. 394;
Mantonya v. Martin Emerich Outfitting Co., 69 Ill.
App. 62.

The mere possession of a promissory note or bond is
*prima facie* evidence of the legal title to the instrument
and of the right of the one in possession to sue thereon,
and in the case of an instrument of that character made
payable to some person other than the one in posses-
sion, the presumption arising from possession is that
the one in possession may sue thereon in the name of
the person to whom it is made payable. Ransom v.
Jones, 1 Scam. (Ill.) 291; Martin v. Martin, 174 Ill. 371;
Curtiss v. Martin, 20 Ill. 557.

An attorney of record who has possession of a prom-
issory note and who brings suit thereon is presumed to
have authority from the payee of the note to conduct
such suit. Harris v. Galbraith, 43 Ill. 309; Williams v.
Butler, 35 Ill. 544; Ransom v. Jones, 1 Scam. (Ill.) 291.

The fact that an attorney at law prepares a bill in
chancery in a party's name and signs the party's name
and his own name to it is unmistakable evidence of the
relation of client and attorney. Burnham v. Roberts,
70 Ill. 19. The presumption of the authority of an at-
torney to act for a party in bringing a suit in the name
of such party necessarily carries with it the presump-
tion of the existence of such party. The note and mort-
gage were in the possession of the solicitor for com-
plainant who filed the bill. They were regular on their
face and were offered and introduced in evidence by
him. Under the issues in this case the introduction of
them in evidence made a *prima facie* case for appellee.

Cases from New York and Nebraska have been cited in support of the contention that appellant was bound to prove in the·first instance the *bona fides* of the transaction. These authorities are not in point here. The statutes under which these decisions were made provide, in substance, that mortgages of personal property, when the possession of the property remains with the mortgagor, shall be presumed to be fraudulent and void as against creditors of the mortgagor unless such possession is provided for by the terms of the mortgage. Such presumption, however, may be rebutted by proof that the transaction was *bona fide* and without intent to defraud creditors. Under our statute such mortgages under the same conditions are absolutely void as against creditors of the mortgagor.

The New York and Nebraska cases cited hold that under the provisions of the statutes of those states, upon the foreclosure of such a mortgage, it is necessary in order to overcome the presumption of invalidity arising from the retention by the mortgagor of the possession of the mortgaged property, when the mortgage did not provide for his so retaining possession, that proof of the *bona fides* of the transaction be made, and that upon such proof being made the presumption of invalidity is overcome and the rights of the mortgagee are paramount to those of a creditor of the mortgagor.

Under our statute the question of the validity of the mortgage as against the rights of a creditor of the mortgagor, when the possession of the mortgaged property remains with the mortgagor, depends on whether the mortgage contains a provision that he may retain possession of such property. If the mortgage does not contain such a provision, it is *void* as to such creditors and no amount of evidence of the *bona fides* of the transaction will alter the situation.

While in the case at bar the mortgagor retained the possession of the mortgaged property, it was express-

ly provided in the mortgage that she might do so, and if she retained the possession of it only so long as by the terms of the mortgage it was stipulated she might, the mortgage was *prima facie* valid as to the creditors of the mortgagor and proof of the *bona fides* of the transaction was unnecessary in the first instance.

The mortgage on its face appears to have been acknowledged before Homer K. Galpin, Clerk of the Municipal Court of Chicago. It is conceded by appellant that Homer K. Galpin was at the time the mortgage was acknowledged clerk of that court, and that as clerk of that court he was qualified to take and certify to the acknowledgment of the mortgage. The undisputed evidence introduced by appellant shows that the acknowledgment was in fact taken by one Frank T. Duffy, who was then a deputy clerk of the Municipal Court of Chicago under Homer K. Galpin, and that Duffy signed the name of Galpin to the certificate of acknowledgment. Duffy also attached the seal of that court to the certificate, but did not affix his own name as deputy to the certificate after the name of his principal.

It is not claimed that there is anything wrong in the form of the certificate or that if it had been signed by Galpin himself it would not have been in compliance with the requirements of the statute, but it is contended that in order to constitute a valid acknowledgment the mortgagor must appear in person before an officer authorized to take the acknowledgment, and that the certificate of acknowledgment must be under the personal hand and seal of the officer taking the acknowledgment; that such acknowledgment cannot be taken by a deputy clerk and the certificate signed by the deputy in the name of the principal. The act of a deputy officer in the name of his principal, within the scope of his authority, is the act of the principal and is as binding on the principal and on third persons, as if performed by the principal personally. It

is the act of the principal and not the agent. Hope v. Sawyer, 14 Ill. 253; Abrams v. Ervin, 9 Ia. 87. In the Hope case the facts were that a deed was acknowledged before a deputy clerk of a court and the certificate was signed by the deputy in the name of the principal and the seal of the court was attached. The contention was there made, as it is here, that the acknowledgment should have been made before, and the certificate signed by, the clerk in person. The court held the acknowledgment and certificate good, saying, "The certificate in question was none the less the act of the clerk, because made by his authorized deputy." In the Abrams case an acknowledgment of the deed was taken by a deputy clerk of the District Court. It was contended that the taking of the acknowledgment was not one of the *duties* of the clerk of the District Court; that it was not a ministerial but a *quasi judicial* act which could only be performed by the clerk in person. On these questions the court said, "Where the duties of a public officer are of a ministerial character, they may be discharged by deputy. Duties of a judicial character can not be so discharged. The clerk is a ministerial officer. When the law gives him the power to appoint a deputy, such deputy, when created, may do any act that the principal might do. He can not have less power than his principal. He has the right to subscribe the name of his principal; and the act of the deputy in the name of the principal, within the scope of his authority, is the act of his principal."

When any act is performed by a deputy, the authority to do which he has solely by reason of the fact that he is such deputy, the act *may* always be done and usually *must* be done in the name of his principal; and where the act done is the signing of some instrument and the deputy signs the name of his principal the act is the act of the principal, and binds him and all the parties concerned as fully as if it had been signed by the principal, even though the name of the deputy

actually signing it is not added. In the case of Talbott
v. Hooser, 12 Bush. (Ky.), 408, a deputy clerk of the
county court took an acknowledgment of a deed in the
name of his principal and signed his principal's name
to the certificate and omitted to sign his own name as
deputy to it. It was claimed the acknowledgment was
a nullity because the principal neither took the acknowl-
edgment nor signed the certificate and because the
deputy who in fact took the acknowledgment and
signed the certificate did not sign his own name to the
certificate, and the certificate did not purport to have
been made by the deputy. In disposing of these ques-
tions the court on page 414, says,

"Whatever official act is done by a deputy should be
done in the name of his principal, and not in the name
of the deputy. The authority given by law to a min-
isterial officer is given to the incumbent of the office.
Authority is not given to the deputy, but to the prin-
cipal, and is exercised by the principal, either by him-
self or his deputy, so that whether the deed was ac-
knowledged before B. M. Harrison in proper person
or before R. E. Harrison it was, in contemplation of
law, acknowledged before the former in his official ca-
pacity; and it was not only lawful, but entirely proper
that the body of the certificate should read precisely
as if the clerk in proper person had taken and certified
the acknowledgment, the only irregularity being that
the deputy omitted, after signing his principal's name,
to add 'By R. E. Harrison, D. C.'

"The certificate being regular and valid on its face,
Mrs. Talbott sought to avoid it by proving that it was
not in fact signed by the principal clerk, and in doing
so she proved that it was written and the clerk's name
signed by R. E. Harrison, and he being a deputy au-
thorized by law to sign his principal's name, the evi-
dence offered to show the certificate illegal, because B.
M. Harrison did not affix his signature to it, shows it
to be valid, because his name was signed by an au-
" orized deputy."

The statute of this state, chapter 95, secs. 2 and

3, relating to the acknowledgment of chattel mortgages, provides in part,

"* * * * * in counties having a population of more than 200,000 such instrument, if the mortgagor is a resident of the State at the time of making the acknowledgment, shall be acknowledged before a justice of the peace of the town or precinct where the mortgagor resides, or if there be no justice of the peace in such town or precinct such instrument shall be acknowledged before the clerk or any deputy clerk of the Municipal Court in the district in which the mortgagor resides, or if there be no such clerk or deputy before the County judge of the county in which the mortgagor resides. The certificate of acknowledgment may be in the following form: This (name of instrument) was acknowledged before me by (name of grantor) (when the acknowledgment is made of a resident insert the words "and entered by me") this ........day of..........19..... Witness my hand and seal. (Name of officer).

SEAL.            ...................

"3. (Acknowledgment Docketed.) If the acknowledgment is by a resident of this State the justice of peace, clerk or deputy clerk of the Municipal Court, or county judge, shall enter in his docket or in some book kept for that purpose a memorandum thereof substantially as follows:

A. B. (name of mortgagor) to C. D. (name of mortgagee); mortgage of (here insert description of the property as in the mortgage.)

Acknowledged this........day of........19...."

Appellant insists the foregoing statute in so far as it authorizes deputy clerks of the Municipal Court to take and certify acknowledgments of chattel mortgages invests them with a power which they must exercise in their own official capacity as deputies, but independent of their principal; that the signature and seal to the certificate must be the personal signature and seal of the deputy and that the deputy must enter the memorandum mentioned in sec. 3, R. S. above

quoted, in the deputies' docket or some book kept by such deputy for that purpose, as distinguished from the docket or book kept by the principal for such purpose. No such construction has ever been placed on that statute by any of the courts of this State so far as we are advised, nor do we think it is susceptible of such construction. A deputy clerk of the municipal court owes his official existence to his principal and has no official existence independent of his principal. He derives all his powers through his principal and has only such powers as his principal has. His official acts are the acts of his principal. No such thing has ever been known to the law as a *deputy* clerk's docket or a *deputy* clerk's seal, and there is nothing in the provisions of the statute quoted to indicate an, intention on the part of the legislature to make the act of a deputy clerk of the Municipal Court in acknowledging chattel mortgages an independent act of the deputy, or other than the act of the principal. So far as anything appears in the record in this case, the mortgage was properly acknowledged.

It is next urged that there is no proof whatever that the memorandum required by section 3, R. S. heretofore quoted, was made. Neither is there any proof in the record that it was *not* made. In the absence of proof to the contrary the presumption is that a public officer has done his duty. Hogue v. Corbit, 156 Ill. 540.

In the absence of proof to the contrary it is presumed that a public officer who has taken an acknowledgment of a chattel mortgage has done his duty and has made the memorandum required by law in his docket or book kept for that purpose. Harlow v. Birger, 30 Ill. 425; Calumet Paper Co. v. Knight & Leonard, 43 Ill. App. 566.

Even if the clerk had failed in his duty in this regard, the rights of the mortgagee who had no control over the clerk could not be prejudiced by such failure, if the mortgage is in proper form and is recorded.

Pease v. Fish Furniture Co., 176 Ill. 220. There is no claim in this case that the mortgage was not duly filed for record and in fact recorded in the recorder's office of Cook county, as required by law, and it must be presumed that the officer who acknowledged it did his duty and made the memorandum in the proper docket or book kept for that purpose as required by law.

It is next urged that the provision of the mortgage for the retention of the possession of the mortgaged property by the mortgagor only provided for such retention until default should be made in the payment of the note secured by the mortgage or some installment thereof, and that, as default had been made in the payment of several installments, before appellant took possession of the property under his distress warrant, and the mortgagee had not elected to take the property by virtue of her mortgage, such possession by the mortgagor after default in the payment of the first installment was fraudulent as to appellant, and he had a right to take possession of it under his distress warrant.

The clause of the mortgage as to the mortgagor retaining possession of the mortgaged property is as follows:

"And Provided, that it shall be lawful for said mortgagor to retain possession of said chattels; and at her own expense to use and enjoy the same, until she shall make default in the payment of said note, or any installment thereof, at the time therein stated. And said mortgagor covenants that, if default be made in payment of the Note aforesaid, or any or either of them, or any part thereof, or, if the mortgagee or his assigns or agents shall feel insecure or unsafe, or fear diminution, removal or waste of said property; or, if the mortgagor shall sell or assign, or attempt to sell or assign, said Chattels, or any interest therein; or if any Writ or Distress Warrant shall be levied on said Chattels or any part thereof, then all of said note, at

the option of said mortgagee, without notice of said option to any one, become at once due and payable, and said mortgagee shall thereupon have right to take immediate possession of said property, and for that purpose, may pursue the same wherever found.''

While the mortgagor was in default in the payment of the installment due January 15, 1908, and subsequent installments, appellee took no steps to foreclose her mortgage until the final installment due July 15, 1908, had become due, and the mortgagor had defaulted in its payment. By the terms of the mortgage it was optional with appellee whether she would elect to declare the whole debt due and payable and take possession of the property on default in the payment of the first installment or any of the subsequent installments, or wait until the whole note should become due. Appellee elected to wait until the whole note became due.

While appellee had a right to elect to declare the whole debt due and payable on default in the payment of the first installment, she was not bound to do so, but could properly exercise her election to wait until the whole debt was due and default had been made in its payment, and the lien and priority of the mortgage was not impaired by her so electing. Cleaves v. Herbert, 61 Ill. 126; Barbour v. White, 37 Ill. 164; Marseilles Mfg. Co. v. Rockford Plow Co., 26 Ill. App. 198; Rehkopf v. Miller, 59 Ill. App. 662; Friend v. Johnson, 68 Ill. App. 661.

It is next contended that the mortgagor was a married woman when the mortgage was executed by her; that the property mortgaged was household goods within the meaning of section 24, chapter 95, R. S., requiring mortgages of household goods to be executed by both husband and wife, and that as this mortgage was only executed by the wife it was void.

The master in chancery, to whom this cause was referred, found that the mortgaged property was not

household property within the meaning of the statute above referred to, and the court that entered the decree confirmed the master's findings in this and all other respects. We have gone over the evidence carefully and are inclined to the view that the evidence warrants that finding. To say the least, the finding is not so manifestly against the weight of the evidence as to warrant a reversal of this decree for that reason. The evidence on the question of marriage of the mortgagor was, to say the least, very unsatisfactory. The mortgage was signed by the mortgagor by the name of Nellie D. Driver, and she was described in the mortgage as Nellie D. Driver, widow. The witness, Mrs. Fenouille, called by appellant, testified that while the mortgagor was a widow, she was known as Mrs. Driver and after she was married she was known as Mrs. Smith; that she did not remember when she was married, but that it was during the summer of 1907, before she occupied the premises at 101 Cass street. There was also testimony to the effect that sometime in October, 1907, on being charged with improper relations with a man by the name of Smith, the mortgagor said they had been married in June, 1907. After the master in chancery had filed his report of evidence and findings, appellant made an application to have the cause re-referred to the master to take further proof as to when the mortgagor was married. The court refused to so re-refer the cause and this is assigned for error. The substance of the additional evidence, which appellant desired to introduce on a re-reference to the master, as to the date of the marriage, as shown by affidavits filed with the motion for a re-reference, was that a Doctor Montgomery had been called to attend the man Smith in August, 1907, and found him and Mrs. Driver in bed together, and that they then said to the doctor that they had been married in June, 1907. The affidavits further disclosed that both appellant and his attorney knew of

this evidence while the cause was yet before the master, and that appellant's attorney said to the master if he had any doubt as to when the marriage took place, appellant desired to produce the doctor as a witness. To this proposal the master seems to have made no reply, and appellant seems to have taken it for granted that it was not necessary to produce the doctor as a witness and did not do so. Treating this evidence as both competent and material, there was absolutely no showing entitling appellant to re-open the case for the introduction of it, and there was no error in denying the motion for a re-reference. Practically the only evidence in the record that the marriage took place before the mortgage was given was the statements of the parties made under circumstances when they must either claim marriage or admit improper relations with each other. The proposed testimony of Dr. Montgomery was cumulative on that point, and even if it had been admitted, we think the master would have been warranted in finding that at the time the mortgage was given Mrs. Driver was a single woman.

We think the decree ordering the foreclosure of the mortgage and the sale of the property was amply warranted by the law and the evidence.

The decree is, therefore, affirmed.

*Decree affirmed.*