(No. 14875.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN STURDYVIN, Plaintiff in Error.

*Opinion filed December 19, 1922.*

1. CRIMINAL LAW—*what is sufficient to prove ownership of the property stolen.* In a prosecution for larceny, ownership of the property stolen must be proved as alleged, but it is not necessary that ownership be proved in specific words and it may be proved by any testimony which establishes the fact.

2. SAME—*when instruction is not prejudicial in assuming ownership of property stolen.* In a prosecution for larceny an instruction should not assume ownership of the property as alleged in the indictment, but the error in giving such an instruction is not prejudicial where there is sufficient evidence to establish the fact of ownership as alleged and there is no evidence from which the jury could have found otherwise.

3. SAME—*the possession of stolen property must be exclusive to raise inference of guilt.* To raise an inference of guilt from the possession of stolen property it is essential that the possession be exclusive in the defendant in the sense that it is personal and inconsistent with an independent possession by others, and if the property is in a public place where others have access and rights as well as the defendant, mere possession by the defendant is not sufficient.

4. SAME—*when evidence of possession of stolen property by defendant will justify conviction of larceny.* In a prosecution for larceny, if the defendant's possession of the stolen property is soon after the commission of the crime and is unexplained there is a presumption of fact that the defendant committed the larceny, and where the *corpus delicti* is proved beyond a reasonable doubt, such unexplained possession may be sufficient to justify a jury in finding the defendant guilty.

5. SAME—*what instruction as to the defendant's possession of stolen property is proper.* Although the defendant's exclusive, recent and unexplained possession of stolen property raises only a presumption of fact as to his guilt, yet in a prosecution for larceny it is proper to instruct the jury that such possession is sufficient to authorize a conviction unless the inference of guilt is overcome by other facts and circumstances so as to raise in the minds of the jury a reasonable doubt of guilt.

6. SAME—*when instruction as to evidence of an alibi is improperly worded.* An instruction offered by the defendant relating to

the evidence of an alibi, stating that if the jury have any reasonable doubt as to whether the defendant was at some other place when the crime was committed they should give the defendant the benefit of the doubt and find him not guilty, is improperly worded, as the reasonable doubt raised by evidence tending to prove an alibi is not whether the defendant was at some other place, but whether he was at the scene of the crime.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

GEORGE W. SPRENGER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, LESTER H. MARTIN, State's Attorney, JAMES B. SEARCY, and JOSEPH W. DEPEW, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At 5:30 o'clock in the afternoon of November 27, 1921, S. K. McDowell drove with his family in a Dodge touring car from his residence in Bloomington to the 400 block on East Grove street, in that city, to make a call and left the car standing on the street. The car was stolen, and after the larceny it was first seen stuck in a mud-hole about eight miles east of Morton, in Tazewell county, and was found the next morning in East Peoria. The plaintiff in error, Ben Sturdyvin, was indicted in the circuit court of McLean county for larceny of the car and was convicted and sentenced to the penitentiary.

The indictment alleged the ownership of the car in S. K. McDowell, and it is contended that there was no proof of the ownership, which must be proved as alleged. (*People* v. *Csontos,* 275 Ill. 402.) McDowell, in telling of going from his residence to the 400 block, said, "We drove our Dodge," and the argument is based on that statement, but he also testified that the casing and jack which were found in the mud-hole next morning belonged to him; that

the jack was in the car under the front seat and the casing was on the rear of the car for a spare tire. On cross-examination he was asked the question whether his car was taken that night, and he answered that it was. It was not necessary that the ownership of the car should be proved in specific words, but it might be proved by any testimony which established the fact, and the ownership was proved and not disputed.

Related to the same subject, the court gave to the jury this instruction:

"The court instructs the jury, that if you believe from the evidence, beyond a reasonable doubt, that the Dodge automobile described in the indictment, the property of S. K. McDowell, was stolen and that such automobile was of the value of more than $15 and if you further believe from the evidence, beyond a reasonable doubt, that the defendant committed such theft, if any there was, or was present aiding, assisting or encouraging such theft, if any there was, then you should find the defendant guilty as charged in the indictment."

The objection to the instruction is that it assumed the fact of ownership by McDowell, which was a fact to be determined by the jury from the evidence. The instruction did not specifically require the jury to find that the car was the property of McDowell from the evidence, and the objection might be quite serious if there had been any evidence from which the jury could have found otherwise. There was nothing in the evidence which would have justified the jury in finding anything else than what was assumed in the instruction, and no harm was done.

It is also contended that the verdict was contrary to the evidence because it was not proved that the defendant stole the car, and there was testimony introduced by him of an alibi. Jerre O'Neal and Doris Kirkpatrick were witnesses for the People, and said that they left Peoria between eight and nine o'clock in the evening of November 27,

1921, in an automobile and drove to Bloomington; that O'Neal was driving the car, and about eight miles east of Morton they came to a mud-hole in which a Dodge touring car was stalled so that they were unable to pass; that their car had two headlights and a spotlight or searchlight, and that there were headlights on the Dodge car which were not very good. O'Neal said he turned his spotlight so as to hit the Dodge car and "saw some guys go over the fence and hit the field,—three of them." Mrs. Kirkpatrick said that she saw two men by the fence. Both testified that the men came back and were asked to help them through the mud-hole; that one of the men was the defendant, and they helped by cranking and pushing the car for O'Neal and Mrs. Kirkpatrick; that the defendant endeavored to crank the car several times and also helped to push it, and that they were looking at him in the bright light and talked with him. They said that with the help of the men they got by the Dodge car and O'Neal went back. O'Neal said that when he went back they were jacking up the back end of the Dodge car, and he asked if he could help them, and they said no—to go on. The jack and the casing were found, as before stated, in the mud-hole afterward.

The defendant denied that he was at the place east of Morton or saw a Dodge car or helped anybody out of a mud-hole or that he stole the car or met Jerre O'Neal or Doris Kirkpatrick that night. He testified that he was a taxi driver, and that on the night of November 27 he lived in Peoria and was at the corner of Fayette and Adams streets, in that city, in a restaurant; that he met Elmer Bell, who was also under indictment for this larceny, and about eight o'clock they went for a ride and went to a garage on the corner of Fayette and Jefferson streets in a Cadillac car; that they left the car there to be washed and went to the last show at the Orpheum, at 108 North Madison street; that they met Mr. and Mrs. Schlagel at the show and borrowed ten cents to make up enough to get in and then went

into the show; that they went to the garage and waited for their car until twelve o'clock and took a ride and went to bed. Bell testified to the same state of facts. Schlagel testified that he saw the defendant and Bell in front of the Orpheum theater that night about nine o'clock or a little later; that Bell had a dollar and borrowed ten cents to make up enough to go into the show, and that he saw them in the show. Homer Driscoll said that he was night foreman at the garage, and Bell and the defendant came with Bell's Cadillac car about a quarter to nine, and that they came between eleven and twelve and got the car.

It is not reasonable to suppose that Jerre O'Neal and Doris Kirkpatrick were mistaken when it is considered that there was a bright light from their car, that the defendant tried several times to crank the car, and that they saw and talked with him. It was for the jury and the trial court to determine which set of witnesses was entitled to credit and to determine the fact, and the record furnishes no test from which this court can say that the conclusion of the jury was wrong.

On the examination of O'Neal he said that when he and Mrs. Kirkpatrick came to Bloomington he went to the city hall and asked Jack Penn if anything had happened, and he said Chadband's store had been robbed. The court denied a motion to strike out the answer. Doubtless suspicion had been aroused in the mind of O'Neal from the circumstance of seeing the "guys" go over the fence, and he went on to tell the men at the city hall what he had seen. They asked him to drive back with them to the mud-hole, and they went on to Peoria, and returning found the jack and the casing in the mud-hole. There was no evidence of any robbery, and no further objection was made to the statement, which was only incidental to the trip back to the mud-hole with the sheriff and others and from there to Peoria. While the court ought to have stricken out what was said about the robbery of Chadband's store, there was nothing raising any

inference against the defendant in connection with it, and the ruling is not sufficient to reverse the judgment.

The court gave an instruction advising the jury that if they believed from the evidence, beyond a reasonable doubt, that the automobile described in the indictment was stolen and shortly thereafter was in the possession of the defendant, such possession by the defendant recently after the larceny was sufficient evidence to warrant a conviction, unless it appeared from all the facts and circumstances in evidence that there was a reasonable doubt of the defendant's guilt. It is argued that the instruction was erroneous in suggesting to the jury that the defendant had exclusive possession of the car, and should have required the jury to find as a fact that his possession was exclusive. It is essential to raise an inference of guilt from the possession of stolen property that the possession is exclusive, in the sense that it is personal and inconsistent with an independent possession by others. If the property is in a place where others have access and rights as well as the defendant, as in a store or other open public place, it is not sufficient. (*Watts* v. *People,* 204 Ill. 233; *People* v. *Lardner,* 296 id. 190.) That was not the case here, where the proof was that the defendant and his companions were in the personal and exclusive possession of the car. The instruction was in harmony with the evidence and did not suggest anything different. It is also objected that possession is only *prima facie* evidence of guilt and not conclusive so as to justify a conviction. As a rule of law, evidence of possession by the defendant of stolen property is always admissible, to be submitted to the jury with the other facts and circumstances. If the possession is soon after the commission of the crime and is unexplained, there is a presumption not of law but of fact, and of much force, that the one in possession committed the larceny. The *corpus delicti* having been proved beyond a reasonable doubt, such unexplained possession may be sufficient to justify a jury in finding the defendant guilty.

It was treated as raising a presumption of fact in *Comfort* v. *People,* 54 Ill. 404, *Huggins* v. *People,* 135 id. 243, and other cases, where it was said that the presumption of fact arising from such possession, unexplained, would warrant a conviction. Although by statute a court is confined to advising the jury, by instructions, as to the law, the inference of fact being the natural and necessary one, it has been held in various cases that an instruction that the possession of stolen property soon after the commission of the offense is sufficient to authorize a conviction unless the inference of guilt is overcome by other facts and circumstances so as to raise in the minds of the jury a reasonable doubt of such guilt may be given to the jury. It is still said, however, that in reality such conclusion, under the evidence, is merely a presumption of fact. (*People* v. *Surace,* 295 Ill. 604.) Under the decisions of this court the instruction was not objectionable.

It is alleged that the court erred in refusing to give an instruction offered by the defendant relating to the evidence of an alibi,—one of the defenses interposed at the trial. The instruction was incorrect in stating that if, in view of all the evidence, the jury had any reasonable doubt as to whether the defendant was at some other place when the crime was committed, they should give the defendant the benefit of the doubt and find him not guilty. The reasonable doubt raised by evidence tending to prove an alibi is not whether the defendant was at some other place, but whether he was at the place where the crime was committed. The jury may have had a reasonable doubt whether the defendant was in Peoria, and evidently did not believe he was. The court did not err in refusing the instruction.

The judgment is affirmed.        *Judgment affirmed.*