(No. 19866. )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LLOYD COFFMAN, Plaintiff in Error.

*Opinion filed February 21, 1930.*

A. W. STOLTZ, and J. A. LAMKIN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, BEN H. TOWNSEND, State's Attorney, and ROY D. JOHNSON, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with one Lester Stephens, was convicted in the circuit court of Wabash county of the crime of burglary. They were charged with breaking into and entering a brick building in the city of Mt. Carmel owned by one Duke Havill and in which he conducted a poolroom. Plaintiff in error brings the cause here for review.

It appears from the evidence of the People that shortly after midnight of July 18, 1927, one Marshall Hastings, night police officer of the city of Mt. Carmel, in making his rounds through the alley back of the Havill building, observed that a window about two feet square in the back of the building was broken out. It appears that this window had been for some time covered with cardboard and that on his last previous trip through this alley the cardboard was in position. Hastings went over to the window and threw his flashlight into the back room of this building and there saw plaintiff in error standing against a door leading into the main room of the building. Hastings ordered him to come out, which he did, and Hastings placed him under arrest and took him to the city hall. It appears also that at that time Stephens, who had entered the building with plaintiff in error through the window, was hiding in a corner of the rear room and so was unobserved by the officer, and after the latter left with plaintiff in error, Stephens came out and went to his home, about five miles from Mt. Carmel. On being questioned by the officer as to whether there was someone else with him and where the other party was, plaintiff in error replied that he must have run down the alley but that he did not know who the other party was. He afterwards,

however, admitted that Lester Stephens was the party with him.

Returning from the alley to the street on which the building faced, the officer also observed one Bert Neeley sitting on an iron stairway which was attached to the building. He was apparently asleep and intoxicated. After placing plaintiff in error in the city jail the officer returned to the rear of the Havill building, being absent therefrom about ten or fifteen minutes, and on examination of the door near which plaintiff in error was standing when apprehended, he found a leaf of an automobile spring standing against the door and also noticed marks on the door and casing showing that they had been recently pried with a flat object. The owner of the building arrived a few minutes later and he and the officer entered the pool-room by the front door. They found indentations and marks on the rear door and that the bolt lock on it was nearly broken off. Hastings testified that the marks on the door resembled such as would be made by the thin end of an automobile spring.

Havill testified that he had been in the pool-room from five to eight o'clock on the evening before, which was Sunday evening, for the purpose of selling ice cream; that he locked up and left the building about eight o'clock, and that at the time he left, the window in the back room was intact and the door between the main room and the back room was securely locked and the bolt lock in good condition.

When the case was called for trial counsel for defendants presented a motion challenging the array of jurors. Evidence was introduced showing that the county board at its September, 1926, session had made a jury list, as required by section 1 of the act concerning jurors, and had selected from that list 200 names, being 100 for each of the two terms of the circuit court of that county, as required by section 2 of the act. The evidence also showed that at the September, 1927, session the county board failed

to make a new list and selection in accordance with the Jurors act but that there remained at that time in the jury box 109 of the 200 names placed there in September, 1926. The trial court held that there was substantial compliance with the requirements of the Jurors act and overruled the challenge to the array. This ruling of the court is assigned as error here.

On the trial plaintiff in error took the stand and testified that he, with Stephens and Neeley, had been riding during the afternoon and had secured a quantity of home-brew beer; that Neeley had become very much intoxicated; that near midnight Neeley became so intoxicated that plaintiff in error and Stephens sought to keep the rest of the liquor·away from him until he sobered up, and that to do so plaintiff in error took the bottle of liquor remaining to the rear of the pool-hall and put it through an open window into the back room, with the intention that he and Stephens would later return and drink it; that afterwards both he and Stephens succeeded in getting away ·from Neeley and climbed into the rear room of the Havill building and drank the liquor; and that thereafter plaintiff in error went into a toilet which was in the corner of the room, and on coming out the officer threw a flashlight on him through the window while he was in front of the door of the·toilet and near the door leading to the pool-room. He testified that Stephens secreted himself in a corner of the room until plaintiff in error and the officer left. Both plaintiff in error and Stephens denied making any attempt to get inside the building or that the automobile-spring leaf had been in their possession. The owner of the building testified that the toilet at the corner of the back room was locked and not accessible to anyone without the key.

It is first contended by counsel for plaintiff in error that the grand jury returning the indictment in this case was not legally selected and constituted, and that they should have been selected from the jury list. This argu-

ment evidences a lack of familiarity on the part of counsel with the statute relating to the subject. Section 9 of the Jurors act (Cahill's Stat. 1929, p. 1615,) prescribes the method of selecting a grand jury. There is no evidence in this record that those requirements were not met.

It is also objected that some of the grand jury were above the age of sixty-five years, and that they were not properly qualified under section 2 of the Jurors act. The maximum age limit for jury service is not a disqualification but a privilege which may be claimed by the prospective juror. (*Davison* v. *People*, 90 Ill. 221.) These objections are without merit.

Counsel also contend that the trial court erred in overruling their challenge to the array of petit jurors. As we have seen, there were in the box from the 1926 selection 109 names. Under section 5 of the Jurors act these jurors were selected for a period of two years, and under that section the 109 names would have been returned to the box had a new list been made in September, 1927. It was the duty of the board to make this new list, but there is no showing whatever that there was not a sufficient number of jurors in court or that the jurors present were not legally selected. There is nothing to show that any substantial right of the plaintiff in error was impaired by the failure of the board of supervisors to strictly comply with the statute in reference to making up the jury list. In the absence of a showing that no attempt was made to comply with the statute, a verdict of a jury will not be set aside, or a judgment based thereon reversed, because a challenge to the array of jurors was overruled, unless the record shows that substantial rights of the defendant were thereby impaired. (*People* v. *Stevens*, 335 Ill. 415; *People* v. *Corder*, 306 id. 264; *Siebert* v. *People*, 143 id. 571.) The court did not err in overruling the challenge to the array.

Plaintiff in error also contends that there is no proof of the allegation in the indictment of an intention to feloni-

ously steal, take and carry away the property of one Duke Havill, the owner of the building, for the reason that there is no proof that Havill owned the contents of the building. The evidence showed that he was owner and in possession of the building and that he conducted a pool-room therein, where he had a soda fountain, with ice cream and other materials usually sold at such a fountain, also tobacco, candy, cigars and cigarettes. This proof was sufficient to show the property in the pool-room belonged to Havill, as charged in the indictment. In the prosecution for larceny, ownership of property stolen is not required to be proved by specific words but may be proved by any testimony which establishes the fact. *People* v. *Sturdyvin,* 306 Ill. 138.

It is also argued that the evidence does not support the verdict of guilty. From what has been detailed in this opinion it is readily seen that the jury, to whom were committed the determination of questions of fact, were justified in finding plaintiff in error guilty. He was found in the rear room of the building, having gained entrance through a window which had recently been broken open, and was standing near a door which showed marks of an attempt to pry it open, and an instrument adapted to so doing. His testimony by which he sought to explain his presence by the door was that he had just been in the toilet, the door to which was adjacent to the one leading into the pool-room. The owner of the building, Havill, however, testified that the toilet room door was locked; that he had on the evening before locked it before leaving the store. The jury were justified in returning the verdict of guilty.

There is no error in the record, and the judgment will be affirmed. *Judgment affirmed.*