## Arthur M. Grosse, Appellee, v. Terminal Railroad Association of St. Louis, Appellant.

416

Opinion filed October 28, 1940. Rehearing withdrawn December 3, 1940.

KRAMER, CAMPBELL, COSTELLO & WIECHERT and NORMAN J. GUNDLACH, both of East St. Louis, for appellant.

MARK D. EAGLETON and ROBERTS P. ELAM, both of St. Louis, Mo., and McGlynn & McGlynn, of East St. Louis, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an action at law, based upon the Federal Employers' Liability Act, brought by Arthur M. Grosse, appellee (hereinafter referred to as plaintiff), against the Terminal Railroad Association of St. Louis, a corporation, appellant (hereinafter referred to as defendant), by whom plaintiff was employed, to recover damages for personal injuries sustained by Grosse, on July 13, 1937, as a result of a fall from a wrecker car through a trestle, while he and other employees were about to clear a wreck, from the right of way of the railroad.

The case was tried upon an amended complaint, consisting of one count, which alleged in substance, that plaintiff was an employee of the defendant and that plaintiff and defendant were subject to the provisions of the Federal Employers' Liability Act; that plaintiff was a member of a wrecking crew and was being transported from St. Louis, Missouri to St. Clair county, Illinois, for the purpose of clearing a wreck; that it was the established custom and practice, when a wrecking train had been brought to a stop at the scene of a wreck, not thereafter to move said train without the members of the train crew first giving to the members of the wrecking crew, a timely and adequate warning of said intended movement; that plaintiff was upon one of the cars of the wrecking train, which had been brought to a stop at the scene of the wreck; that plaintiff was caused to be violently jerked

and thrown from said car; that he fell to the ground and was injured by the negligence of the defendant in violation of the aforesaid custom and practice in moving said train without giving a timely and adequate warning to the plaintiff.

Upon a trial of the issues before a jury, a verdict of $15,000 was returned in favor of plaintiff. A motion for a new trial was denied and judgment was entered in the above amount from which defendant appeals to this court.

Plaintiff's testimony was to the effect that he was an employee of the defendant, with about 20 years' experience in car repair and inspection work as member of a wrecking crew. He was so employed at 12:30 a. m. on July 13, 1937, in the city of St. Louis, Missouri when he was assigned to go with a wrecking crew to East St. Louis, Illinois. A wreck had occurred on the Illinois Transfer track. A Cotton Belt train had collided with a cattle truck near East St. Louis. There were four members of the train crew, engineer, fireman, conductor and brakeman. There were four members of the wrecking crew, including plaintiff.

As the train left St. Louis and headed generally in an easterly direction toward East St. Louis, the engine was at the front of the train and pulled a block car, tool car and a car upon which a derrick was located. At what was known as the Willows, on the B. and O. track, where there was a "Y," the train moved west, with the wrecking car, or car with the derrick as the leading car and the engine pushing the cars. Plaintiff and other members of the wrecking crew were in the tool car, with the conductor of the train, until arrival at the B. & O. tracks. Here, he left the tool car and went back to the derrick, for the purpose of firing it. Between the wreck and the wrecking train was a trestle, upon which ran two tracks with an open space between. As the wrecking train approached the scene of the wreck it was proceeding very slowly. It was on

the northbound track, proceeding west. The Cotton Belt train was on the south track, stationary and facing east, with the engine at the front, its headlight on. It is claimed said headlight was later dimmed. When the train stopped the first time, near the wreck, according to the plaintiff, he did not immediately go outside and get down. Plaintiff testified that Hyde, the foreman, in charge of the wrecking crew, yelled at this time, "Loosen up," which meant that the wrecking crew from then on was in charge. He also testified that the movement of a wrecking train is entirely under the control of the switching crew, until the wrecker is finally stopped for the wrecking crew to proceed to work, and that control passes to the wrecking crew, when the foreman of the wrecking crew says, "Loosen up." After the wreck is spotted, the wrecking crew is to be warned of any prospective movements of the train.

Plaintiff testified that he went over the south side of the derrick car and looked down to see if it was safe to get off, but could not determine accurately and definitely. He then started down the side, stepped on the sillstep and then down on the grab iron until he got to the bottom sillstep. At this time, he said, there was a violent movement of the train back toward the east and he was thrown against the side of the car, his handhold was torn loose and that was the last he remembered. Plaintiff suffered injuries about the seriousness of which there seems to have been little controversy.

It is contended by the defendant, at considerable length that the court erred in denying defendant's challenge to the array of power in that the County Board of Supervisors failed to comply substantially with the statute and that therefore the panel of jurors was not drawn properly. We do not deem it necessary for the purposes of this opinion to set forth *verbatim* the provisions of the act relating to jurors in connec-

tion with the duties of the County Board of Supervisors with relation to petit jurors. Under the act the County Board has two entirely separate and distinct functions, one of which is to make a jury list of not less than one-tenth of the legal voters of each town or precinct in the county and the other of which is to select from the jury list such number of persons to serve as petit jurors in the circuit and other courts of record held in the county during the succeeding year as may be designated by joint action of the judges of those courts. There are then, the two functions of making a jury list and making a selection therefrom.

Section 1 provides for the making of a "list," while section 2 provides for the making of a selection from such list. Section 3 refers to such two groups, respectively, as the "list" and the "selection." Therefore, for convenience, as well as using the language of the statute, the two groups respectively may be referred to as the "jury list" and the "jury selection." It is argued by the defendant that the legislative intent was that a new list should be made by the Board of Supervisors every year in their September meeting. From this language counsel contend that the "jury list" should be made every year. On the other hand they maintain that it is quite apparent from these provisions that the service of a jury panel drawn from this list must cease with the expiration of two years.

Standing alone the language in section 1, is perhaps uncertain. From such language it might appear that the statute directs that the jury list be made each year, "or at any time thereafter (in such year) when necessary." However, all of the sections of the statute must be read together in order to arrive at the proper construction. *Uphoff v. Industrial Board,* 271 Ill. 312; *Krome v. Halbert,* 263 Ill. 172. From the language in section 5, directing that "all subsequent (as well as initial) selections shall be made from such list until all persons thereon qualified to serve have been

selected, or until the expiration of two years from the time of making such list," it clearly appears that the jury list is to be made only once in two years, unless for some reason it is necessary to make a subsequent list during such two years.

In the instant case the board made the jury list on June 14, 1937. That this list was properly made is not questioned. It was from this list that the selection was made. On August 22, 1938, pursuant to section 2, the judges of the courts of record ordered that the board make a selection of nine hundred jurors from the jury list. The jury selection in question was made on September 10, 1938, or before the expiration of two years from the date the master list was compiled. This particular panel was drawn on May 4, 1939 and was summoned to appear for service on June 19, 1939. May 4, 1939, when such panel was drawn was within two years from June 14, 1937, when the jury list was made.

It is contended that although the panel was drawn within the two years it was not summoned and did not serve within such two years. We cannot see any force to this reasoning. In our opinion the jury selection was a legal selection and remained such until at least the expiration of two years from June 14, 1937. It was a legal selection on May 4, 1939 when the panel was drawn. The fact that the panel was not to serve until June 19, 1939 did not invalidate the panel.

We do not agree with the contention that the county clerk at the time of the drawing of the panel unlawfully acted by deputy instead of in person. The drawing was, in legal effect held "in the presence of the County Clerk" when held in the presence of his duly appointed and authorized deputy. *Mitchell v. Short,* 251 Ill. App. 357; *Woodward v. Donovan,* 167 Ill. App. 503; *People v. San Filippo,* 255 Ill. App. 554.

Section 8, ch. 78 (Ill. Rev. Stat. 1937); Jones Ill. Stat. Ann. 107.231 provides in substance that, upon a

day designated by the judge (in this case there were two judges of the city court) of the court . . . the clerk of such court shall repair to the office of the county clerk and . . . draw from the jury box . . . such number of persons . . . as shall be required by said order to act as petit jurors, in said court for such time as may be fixed in such order. The clerk of the court testified there were two judges of such court, that such judges ordered him to go to Belleville (the county seat) and draw a jury for two weeks beginning June 19, but that there was no written order of record. Defendant contends that this oral direction was not in compliance with the statute.

It will be noted that in getting the regular panel the statute above uses the words "upon a day designated by the judge." It does not say the judge shall order. In our opinion the action of the judges in directing the clerk to draw was a sufficient designation.

Where a substantial compliance is made with the statutory method of summoning petit jurors for trials in courts of record, mere irregularities will be disregarded, and a challenge to the array should be overruled unless there is a clear showing that the rights of a litigant have been prejudiced. *People v. Coffman,* 338 Ill. 367, 170 N. E. 227; *People v. Corder,* 306 Ill. 264, 137 N. E. 845; *People v. Stevens,* 335 Ill. 415, 167 N. E. 49; *Siebert v. People,* 143 Ill. 571, 32 N. E. 431; *People v. Albers,* 360 Ill. 73, 195 N. E. 459.

We believe that there was a substantial compliance with the statute in the instant case, and there being no showing of prejudice, the challenge to the array was properly overruled.

It is urged that the court erred in denying defendant's motion for a directed verdict at the close of all of the evidence. In passing upon this point, we are not unmindful that there seems to be no dispute about the fact that plaintiff was engaged in the furtherance of interstate commerce at the time of his injury and

the Federal Employers' Liability Act controls this action. 45 U. S. C. A. sec. 51; *Kinzell v. Chicago M. & St. P. R. Co.*, 250 U. S. 130, 63 L. Ed. 893, 39 S. Ct. 412; *Miller v. Central R. Co. of N. J.* (C. C. A. 2), 58 F. (2d) 635; *Parrent v. Mobile & O. R. Co.*, 334 Mo. 1202, 70 S. W. (2d) 1068.

Therefore State courts are bound by the decisions of the federal courts in such actions. *Chesapeake & Ohio R. Co. v. Kuhn*, 284 U. S. 44, 76 L. Ed. 157, 52 S. Ct. 45; *Pryor v. Williams*, 254 U. S. 43, 65 L. Ed. 120, 41 S. Ct. 36; *Kusturin v. Chicago & A. R. Co.*, 287 Ill. 306, 122 N. E. 512.

The federal courts have held that the fact that the verdict and the judgment are against the weight of the evidence, are not for the determination of an Appellate Court. *Warbende v. Prudential Ins. Co. of America* (C.C.A. 7), 97 F. (2d) 749; *Swinger v. Firmin Equipment Corp.* (C.C.A. 7), 94 F. (2d) 269; *Grand Trunk W. R. Co. v. Heatlie* (C.C.A. 6), 48 F. (2d) 759; *Goodwin v. United States* (C.C.A. 6), 2 F. (2d) 200; *Kusturin v. Chicago & A. R. Co.*, 287 Ill. 306, 122 N. E. 512.

In passing upon the proposition as to whether or not the lower court erred in denying defendant's motion for a directed verdict at the close of all the evidence, plaintiff is entitled to the benefit of all the evidence favorable to him and all favorable inferences reasonably and naturally to be drawn from the evidence, in order to determine only if such evidence and inferences, if true, were sufficient to establish plaintiff's case. *Gunning v. Cooley*, 281 U. S. 90, 74 L. Ed. 720, 50 S. Ct. 231; *Tobin v. Pennsylvania R. Co.* (App. D. C.), 100 F. (2d) 435; *Huff v. Illinois Cent. R. Co.*, 362 Ill. 95, 199 N. E. 116; *Walldren Express & Van Co. v. Krug*, 291 Ill. 472, 126 N. E. 97.

We are limited under the authorities to a determination of the one question of whether or not the plaintiff's evidence, taken as true, with all the intendments there-

from most favorable to him, is sufficient to establish the specific negligence charged by him, the material propositions therein being, the custom, the unexpected violation of the custom (without warning), and the resultant injury. The plaintiff's testimony proved the custom, when he testified, ''After we get to a wreck and the derrick man says 'loosen up' that is the time when it passes control.'' He further testified that during his entire experience, when called on wrecks of that type, and the derrick car had been brought to a stop, it was the custom and practice that the train crew would never make a move unless they would notify the wrecking crew by ''hollering'' at them.

The defendant's witness, Hyde, who was the foreman of the wrecking crew, corroborated the plaintiff, when he testified, '' After the wrecking foreman hollers 'loosen her up' they never move it (the train) until they get permission from him.''

Briefly stated, the plaintiff, with reference to how the injury was sustained, testified: ''After the train had come to a complete stop . . . I started down the side (of the derrick car) so I could see the ground. . . . I was on the bottom of the sill step, my feet were on the sill step, and my hands on the grab iron . . . and the derrick (car) moved in the opposite direction (easterly) and threw me up against the side and tore my hand hold loose . . . When the train started to back up . . . there was a severe jerk, severe enough to . . . tear loose the strong hold I had on the sill step. I did not receive any warning of any kind from the train crew before this thing was moved backwards . . . no one hollered at me.'' Giving the plaintiff the benefit of all the evidence favorable to him and all favorable inferences reasonably and naturally to be drawn from the evidence, he established all the material allegations of his complaint, the custom, which was known to him and upon which he relied, the unexpected violation of

that custom, without warning, and the resultant injury, and by their verdict, the jury so found.

It is contended that plaintiff assumed all the ordinary risks of his employment. The burden of proving this was on the defendant and the weight of the testimony was for the jury. *Brant v. Chicago & A. R. Co.*, 294 Ill. 606; *Kiefer v. Elgin J. & E. Ry. Co.*, 351 Ill. 634; *Maher v. New York, C. & St. L. R. Co.*, 280 Ill. App. 222. In the *Kiefer* case the Supreme Court said, "Plaintiff did not assume the risk incident to a sudden increase in speed at the very moment he was attempting to board the locomotive, when the engineer had knowledge he was about to do so." It was there held that the trial court did not err in refusing a directed verdict for the defendant on the ground the plaintiff assumed the risk. In the instant case there was the custom, plaintiff knew of such custom and had a right to rely upon the observance of it. Such a servant does not assume the risk of an unexpected, negligent departure from the customary method of doing dangerous work. *Waiswila v. Illinois Cent. R. Co.*, 220 Ill. App. 113.

We are of the opinion that the trial court properly denied defendant's motion for a directed verdict at the close of all of the evidence.

Complaint is made of instructions one and two offered by the plaintiff and given by the court. We find no reversible error in either instruction so given. The first instruction relates to the question of damages, and concludes, "you may also take into consideration the loss of earnings plaintiff has suffered, if any, on account of said injuries, if any, and from the preponderance and greater weight of the evidence plaintiff is reasonably certain to suffer in the future by reason and on account of said injuries, if any, not however, at a greater rate than One Hundred Sixty Dollars per month for any such loss of earnings, if any." Although

such reference to the maximum amount of the wages alleged to have been earned by plaintiff as a maximum of recovery for loss of earnings is not to be commended, still, we do not think that it constitutes such error as calls for a reversal of the judgment.

For the reasons above indicated, the judgment of the lower court is affirmed.

*Affirmed.*