William E. Maher, Appellee, v. The New York, Chicago and St. Louis Railroad Company, Appellant.

Gen. No. 37,941.

224

Heard in the first division of this court for the first district at the December term, 1934. Opinion filed May 6, 1935. Rehearing denied and opinion slightly modified May 20, 1935.

WINSTON, STRAWN & SHAW, of Chicago, for appellant; SILAS H. STRAWN, HAROLD A. SMITH and DOUGLAS C. MOIR, all of Chicago, of counsel.

JOSEPH D. RYAN and LOUIS P. MILLER, both of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

On November 12, 1931, plaintiff, who was employed by defendant as a switchman, was working with his crew assigned to the Stony Island yard of defendant located at Stony Island avenue and 87th street in the city of Chicago.

The railroad tracks in this yard ran in a general southeasterly and northwesterly direction. The multiplicity of tracks, buildings, etc., renders it somewhat difficult, notwithstanding a plat offered in evidence, to get an accurate picture of the circumstances under which the accident to plaintiff occurred which is the basis of this suit. A drawing attached to plaintiff's brief gives a clearer view of the situation. Viewing

the switch yard from the north, it shows well toward the center running from north to south what is called a spur lead track which intersects various switch tracks at angles more or less acute. These tracks are numbered in succession from north to south 1, 2, 3, 4, 5 and 6. To the right, or west, are other tracks, the most westerly being No. 14. Between the spur lead track and No. 14 were the transfer building and numerous cars placed upon the tracks, and at about half distance was a structure described as a covered platform. To the left and east of the spur track lead and intersecting it at a considerable distance north of switch track No. 1 was a track known as hold yard track No. 3.

The switching crew to which plaintiff belonged came on duty at 10:45 p. m., November 11, 1931. It consisted of W. G. Vanderhye, conductor, H. E. Dittman, headman, William C. Bonta, engineer, H. B. Ferry, fireman, and plaintiff, switchman and fieldman.

There were two flood lights, one on each side of the track on 87th street facing south into the yard. These lights were out during this whole evening, and throughout the night there was much heavy, although intermittent, rain. The crew was assigned to the work of breaking up train No. 35 and moving cars from another train, N. C. 13. These cars stood on hold yard track No. 3. All the cars in the train came from points outside the State of Illinois. Car NKP X. 50600 was billed from Ohio and consigned to the defendant railroad's storekeeper, Mr. Temple.

Plaintiff, as fieldman at this time, had a list of all the cars which were to be switched, as well as the different tracks upon which the same were to be placed. Plaintiff's engine was coupled onto 15 to 18 cars on track No. 3 and proceeded to distribute them. Plaintiff threw some of the switches and the conductor others, as was the usual practice.

In the course of his duties plaintiff was required to go to track No. 14 and west of it about 250 feet distant. In doing so it was necessary to walk around "Transfer House" and a number of intervening cars. In his absence the crew did other switching. When he returned to the lead track three cars were attached to the engine, the third in position from it being car NKP X. 50600. The engine was backing down the spur yard lead in a southerly direction, pushing these three cars at a speed estimated by the different witnesses at from five to ten miles per hour. Plaintiff approaching from the west climbed onto the southwest corner of the NKP X., which as the engine backed was the leading car. He stood on the stirrup; he held on with both hands, also holding his lantern in front of him with his right hand; he was on the same side of the car as the fireman, that is, the west side. The engineer and conductor were on the east side where the controlling signals were given by the conductor directing the movements. Dittman, the other brakeman, rode on the southeast corner of the second car from the engine and was also on the east side of the train as it moved. He was there in order to relay the signals of the conductor to the engineer. The purpose of this particular movement was to shove in the cars on switch track 4 so as to clear the spur lead track, in order that the cars designated for switch track 6 could be set in on it. Plaintiff testified he did not know that the spur lead track was blocked at a point 180 feet north of switch 4, nor that there were any cars on the spur lead. The conductor was in full charge of the movement. From his position plaintiff could not see the conductor. When about a car length from the cars opposite switch No. 2 the conductor discovered the cars that had been left there; he gave a slow-down signal and jumped off the train. Plaintiff could not see the signal and when the train collided with two

cars standing on the track he was thrown off, the car on which he was riding ran over him and he received injuries which made necessary the amputation of his arm near the shoulder.

Plaintiff brought suit under the Employers' Liability Act, the declaration averring that defendant negligently backed these three cars into the others, negligently allowed the cars to be upon the lead track and negligently failed to furnish plaintiff a safe place in which to do his work; that the conductor negligently gave the order to back up the cars on the spur lead track and failed to ascertain the place on the spur lead track where other cars came to a standstill. The cause was submitted to a jury which returned a verdict in favor of plaintiff in the sum of $24,600, upon which the court, overruling motions for a new trial and in arrest, entered judgment.

Defendant contends that all the risks of the movement of the cars by which plaintiff was injured were open and obvious and were therefore assumed by plaintiff. A large number of cases are cited, which we think it quite unnecessary to review. In Roberts Federal Liabilities of Carriers, 2nd ed., vol. 2, ch. 39, sec. 831, p. 1606, the author states the doctrine of assumed risk as follows:

"The nature and elements of the doctrine of assumption of risk, as applied to interstate employees of interstate carriers under the federal act, have been well established in a series of controlling decisions by the United States Supreme Court. The risks are of two kinds, ordinary and extraordinary. Ordinary risks are those that are normally incident to the occupation in which an employee voluntarily engages. An employee is conclusively presumed to have knowledge of such risks and assumes injuries arising therefrom. Such ordinary risks are assumed by an employee whether he is actually aware of them or not; for the dangers

and risks that are normally or necessarily incident to his occupation are presumably taken into account in fixing the rate of wages. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the carrier to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These are known as extraordinary risks. An employee has the right to assume that his employer has exercised due care for his safety. He is not to be treated as assuming these extraordinary risks arising from defects due to the negligence of the employer unless he has knowledge of them and of the danger arising therefrom, or unless the risk and danger are so obvious that an ordinarily prudent person under similar circumstances would have known the risk and appreciated the danger arising therefrom.''

We hold that the risk to which plaintiff was subjected by this particular movement was not a hazard which was usual or customary for defendant's employees to take. There was evidence tending to show (and the jury apparently believed) that plaintiff rode into this unusual and extraordinary danger without knowledge and therefore without appreciation of the hazards to which he was subjected. The situation which resulted in his injury was unusual, unexpected, extraordinary and contrary to experience. Under the decisions of federal courts (which are controlling) assumed risk is an affirmative defense, and the burden of proving it is on defendant. *Seaboard Air Line Ry. v. Moore,* 228 U. S. 433; *Central Vermont Ry. Co. v. White,* 238 U. S. 507; *Kanawha & Michigan Ry. Co. v. Kerse,* 239 U. S. 576; *Waiswila v. Illinois Cent. R. Co.,* 220 Ill. App. 113; *Wetterer v. Atchison, T. & S. F. Ry. Co.,* 277 Ill. App. 275; *Fisher v. Chicago, R. I. & P. Ry. Co.,* 290 Ill. 49; *Kiefer v. Elgin, J. & E. Ry. Co.,* 351 Ill. 634. It is also important in this class of

cases to bear in mind the fundamental distinction between assumed risk and contributory negligence. *Schlemmer v. Buffalo, R. & P. Ry. Co.*, 205 U. S. 1. We have no hesitancy in holding that the question of assumed risk was for the jury.

Defendant complains that in some of the instructions given at plaintiff's request the words "interstate commerce" were used instead of "interstate transportation." To this point defendant cites *Chicago & N. W. Ry. Co. v. Bolle*, 284 U. S. 74; *Chicago & E. I. R. Co. v. Industrial Commission*, 284 U. S. 296; *New York, N. H. & H. R. Co. v. Bezue*, 284 U. S. 415. As plaintiff points out, in none of the cited cases was the plaintiff actually engaged in transportation. In the instant case the uncontradicted evidence shows that plaintiff was in fact engaged in interstate transportation. The instruction seems to have followed the language of the statute, and the giving of it, even if technically erroneous, was not reversible error.

Defendant further complains that the court erred when, after restricting each of the parties to 15 suggestions for instructions to the jury, it was ruled that the peremptory instructions which defendant requested as to each count of the declaration were to be counted. The ruling was, we think, subject to criticism, but in view of the fact that the jury seems to have been fully and accurately instructed as to the law applicable, we will not reverse for this reason.

Defendant argues reversible error by reason of a ruling of the court that it might not peremptorily excuse two jurors of the second panel, Mr. O'Brien and Mr. Vanderbok. The jurors were examined in panels of four. In examination of the first panel the question arose as to whether when the plaintiff tendered the panel to defendant, such act amounted to an acceptance of them, Mr. Ryan for plaintiff contending that he could tender without accepting, which he did. Mr.

Smith for defendant then examined the four and tendered them back to Mr. Ryan. Mr. Ryan then accepted the four and the court directed them to be sworn when Mr. Smith objected, stating he had not yet accepted the four and that he wished to excuse one of them. Thereupon, without objection the challenge was permitted.

The second panel of four were sworn to answer questions; Mr. Ryan after examination of them stated: "I will tender the four gentlemen." Mr. Smith for defendant then examined the four and inquired if they were "acceptable to you, Mr. Ryan." Mr. Ryan replied, "I tender these four gentlemen to you for acceptance." The court inquired of Mr. Smith as to his views, to which he replied that he did not understand the law to be that it was for defendant to accept first and that it was up to plaintiff to do so. Mr. Ryan said that was not the rule and that he would state what it was, when the court interposed: "He has tendered them to you. Now what? Do you tender them?" Mr. Smith replied, "When he has accepted them." Mr. Ryan said, "They are accepted." The court then directed that the second four should arise and be sworn, whereupon Mr. Smith objected.

There was an extended colloquy in which Mr. Ryan indicated his opinion that after he had accepted the four, defendant might interpose a challenge. The court inquired the why "of all this foolishness" and asked Mr. Smith whom he wished to challenge. Mr. Smith said that he wished Mr. Ryan to challenge first. The court then directed the second four jurors to be sworn, but both Mr. Ryan and Mr. Smith protested that they had not accepted the panel. The court stated that when the jurors were tendered they were accepted. Mr. Ryan insisted otherwise and called the attention of the court to the case of *People v. Gray*, 251 Ill. 431, and the reported case was apparently handed to the

court for examination. While the court was examining it Mr. Ryan interrupted to ask if in the meantime he might question Mr. Cooper, one of the jurors, and he was allowed to do so. After quite an extended examination Mr. Ryan said that the jurors were acceptable to him. Mr. Smith then said that he would excuse juror Doyle, but the court ruled that he was too late and defendant took an exception. The court then directed the four of the second panel to arise and be sworn, which was done, defendant again taking an exception. Later Mr. Ryan after examining the third panel of the veniremen said that he would tender the four, and Mr. Smith again inquired if they were acceptable to Mr. Ryan; Mr. Ryan replied that he was tendering the next four. Mr. Smith again asked if they were accepted by Mr. Ryan. The court said, "Yes, that means that they are accepted by Mr. Ryan" unless Mr. Smith should challenge them, and Mr. Smith said that was all right.

Before proceeding further with the examination Mr. Smith suggested to the court that he wished to make a motion out of the presence of the jury. The parties retired to the judge's chambers where attorney for defendant made a motion that a juror be withdrawn and the case continued for the reason that the incident which occurred during the examination of the second panel was, as counsel described it, "unfortunately unfair to me." Counsel stated that he had attempted to excuse Mr. Doyle and even mentioned his name when the court ruled that it came too late. He also stated that he then desired and still wished to excuse Mr. Vanderbok. The motion, however, was denied.

Plaintiff says that the real point in issue is, When is a panel accepted? He further says that the word "tender" as used in the instant case and in the reported decisions is a word unknown to the statute; that the question is whether "tendering" is synonymous

with "accepting," and that so far as research has developed the precise point has never been squarely decided. He insists, however, that a number of decisions clearly indicate that when a party tenders a panel he accepts it. Section 21 of chapter 78, Cahill's Ill. Rev. Stats. 1933, directs the manner in which juries shall be impaneled, and the section is applicable in both civil and criminal cases. That section provides: ". . . The jury shall be passed upon and accepted in panels of four by the parties, commencing with the plaintiff."

In *People v. Nylin,* 139 Ill. App. 500, the State tendered a panel of four to defendant, who excused one of them. Another venireman was called, and defendant insisted that the State should examine him before defendant was required to do so. Defendant had exhausted his peremptory challenges, and the excused juror had been successfully challenged for cause by defendant. The Appellate Court said that defendant having challenged a juror and the challenge having been allowed, the practice in this State was for the party who broke the panel by challenging jurors to fill the places of those excused by him and tender a full panel back to the opposite party; that each party when a full panel had been tendered him must tender the other party a full panel of four, and that the court did not err in its ruling. The judgment was affirmed in 236 Ill. 19.

In *Mayers v. Smith,* 121 Ill. 442 (while passing upon the third panel and before it was accepted by them and before any of the jurors were sworn and while the defendants had two unused peremptory challenges) defendants offered to challenge peremptorily two jurors, who were in the panels previously accepted but who had not been sworn. The court refused to permit the challenges, and upon appeal defendants contended that the statutory rights of challenging any juror peremp-

torily might be exercised at any time before the juror was sworn, although he was previously passed upon and accepted by both parties. The Supreme Court said that under our statute the right of peremptory challenge was cut off with respect to any one of a panel of four jurors which had been passed upon and accepted by both parties, citing *Sterling Bridge Co. v. Pearl,* 80 Ill. 251; and *Belt v. People,* 97 Ill. 461.

In *Collison v. Illinois Cent. R. Co.,* 239 Ill. 532, the defendant complained that in impaneling the jury it was compelled to examine and pass upon the second panel of four jurors before the same were examined and accepted by the plaintiff. The court said:

"When one panel of four is complete the plaintiff is to pass upon and accept the next panel of four and tender the same to defendant, and so on. The plaintiff is not called upon to tender a second panel of four to the defendant before the defendant has tendered back the first panel of four (*Spies v. People,* 122 Ill. 1) but when four are taken by both sides the plaintiff must go ahead with the next panel. The ruling was wrong, but the rights of the defendant do not appear to have been prejudiced in any way by it and therefore it is not ground for a reversal."

In *People v. Gray,* 251 Ill. 431, it appeared that counsel for the State examined a panel of four jurors and tendered them to counsel for defendant who excused two and thereafter filled the panel and tendered the four to opposing counsel. The State then challenged peremptorily one of the two jurors who had been originally tendered to defendant, and the challenge was allowed over objection. The court distinguished *Mayers v. Smith,* 121 Ill. 442, and held that the trial court did not err and that "until both sides accept the panel of four, without question the statute permits either side to challenge peremptorily a juror theretofore tendered to the other side."

In *People v. Munday,* 280 Ill. 32, it appeared that on two occasions the State tendered to the defendant four jurors, and that upon examination by defendant's counsel a juror in each instance was excused for cause, and the court thereupon required the defendant to fill the panel. It was contended in the Supreme Court that the State was bound to tender to the defense in panels of four, competent and qualified jurors, and that if, after tender it was disclosed that any member of the panel was disqualified for cause the examination then shifted to the State to fill the panel. The Supreme Court, however, said that the trial court did not err in this respect, cited sections 21 and 23 of the statute concerning jurors and said that it was incumbent on the State to secure a panel of four that was acceptable to it, and that it might tender them to the defense; that the examination on the part of the State might disclose that one of the jurors in the panel was disqualified for cause, but that the State had the right, if it saw fit, to waive its privilege to challenge for cause and to accept the jurors.

In *People v. Curran,* 286 Ill. 302, it appeared that four jurors were accepted by both sides and sworn; that nine days afterward, during the examination of the second four, one of the jurors named Brown was excused for physical incapacity. There were a number of defendants, each of whom then attempted to interpose a peremptory challenge to another juror of the first four, named Shaw. The challenge was overruled, and it was urged that the court erred in denying the peremptory challenge of Shaw because of the provision of the statute that the jury should be passed upon and accepted in panels of four. The Supreme Court pointed out that at common law each juror was sworn as he was chosen and that there was no right to peremptorily challenge after the juror was sworn, and said that until both sides accepted a panel of four the

statute permitted either side to challenge peremptorily a juror tendered to the other side. The court, after reviewing cases, further said that no case had been found deciding that after a juror was accepted and sworn and became one of the jury to try the issue he could be challenged peremptorily as a matter of right, and that the court did not err in denying the peremptory challenge.

We have reviewed all the cases cited. It is true, as plaintiff suggests, that none of them decides the precise question arising here. Under the statute the examination of the jurors must be begun by the plaintiff, and when four jurors are found satisfactory to the plaintiff, he should announce his acceptance of them and tender the panel thus accepted to his adversary for examination. It is believed that this has been the usual practice in well-tried cases, and if it had been followed in this case this unfortunate misunderstanding would not have occurred. The practice of plaintiff in first tendering a panel to defendant without accepting it, and of defendant in then tendering that panel back without accepting and awaiting the decision of plaintiff as to whether he will accept a panel which he has already tendered, would be intolerable; yet that seems to have been the practice indulged in in the selection of the first panel. Counsel for defendant was therefore excusable in thinking that since plaintiff had only tendered the panel he could tender the panel back for acceptance by plaintiff, without waiving his right to a peremptory challenge. The judge was right, in our opinion, when he expressed the view that the tender of a panel implied on the part of the one making the tender an acceptance of it. Nevertheless, we think the ruling · against defendant was erroneous. The former acceptance of the panel was practically set aside when the attorney for plaintiff by permission proceeded to re-examine one of the jurors. The re-

examination was satisfactory to plaintiff. Defendant (his peremptory challenges were not exhausted) had a right to say after this further examination whether the panel was then satisfactory to him. Moreover, in the selection of the first panel the court allowed challenges after the panel was tendered. The rule should not have been changed without warning. The effect was to mislead defendant. It was thereby deprived of the exercise of a substantial right, and the error was reversible.

There is merit also to the further contention of defendant that the conduct of the attorney for plaintiff in the course of the trial was subject to criticism. Diggin, who was a member of the switching crew, was called as a witness by defendant and testified to a conversation with John Davis, to whom the witness had made a statement on February 21, 1932. He was asked by Mr. Ryan on cross-examination as to whether he told Davis certain facts, and he replied he had. The witness was then asked whether that was the fact, to which he replied: ''It is. He wanted that statement, he said, so Maher could get his insurance from the B. R. T.'' The attorney for plaintiff then said: ''I move to strike out the answer, if the Court please, and I submit this is viciously, prejudicially injected into this case, and it certainly was not inspired by this witness himself.''

''Mr. Smith: I take exception to that slanderous remark.

''Mr. Ryan: Well, you take all the exceptions you want.

''Mr. Smith: If the Court please, I want to make a motion out of the presence of the jury right now.

''Mr. Ryan: Your Honor, his conclusion could not have any possible relevancy.

''The Court: I know, but your statement that it was inspired by somebody other than the witness him-

self is not sustained by what was said in the case. Objection sustained.

"Mr. Ryan: Then I move to strike it out as not responsive to the question.

"The Court: The last part of his answer is not responsive."

Upon redirect examination of yardmaster Wilson, the record shows:

"Q. Was it his duty to clear that fouled lead?

"Mr. Ryan: I object, if the Court please.

"The Court: Sustained.

"Mr. Smith: Exception.

"Mr. Ryan: It is not his duty at all, and you know it.

"Mr. Smith: I object to that statement.

"Mr. Ryan: I object to this yardmaster telling the jury whose duty it was to do anything."

In the course of Mr. Ryan's argument to the jury the record shows the following:

"Mr. Ryan: They have got a receipt where way back in 1925, some nine years, that he signed for one. Where is the receipt for his rule book? He told you he got a rule book.

"Mr. Smith: Here it is. Do you want it?

"Mr. Ryan: I object to this, your Honor.

"Mr. Smith: Oh, you don't want the exhibits.

"Mr. Ryan: These are more of these underhanded tactics.

"Mr. Smith: I take exception to that statement.

"Mr. Ryan: I object to counsel's remark.

"The Court: All right, take your objection. Go ahead, counsel, with the argument."

Again, in the examination of plaintiff, the following took place:

"Mr. Ryan: Well, your Honor,—Mr. Smith, don't I understand, or am I in error about it, that you have

agreed that train 35 was on this track at this time, and there were ten cars on the track—

"Mr. Smith: I don't agree to that.

"Mr. Ryan: Well, then you are going back on your agreement.

"Mr. Smith: I am not going back on anything.

"The Court: Well, now, gentlemen, go on with this case and do not argue with each other.

"Mr. Ryan: All right. I will start issuing subpoenas here for the records.

"Mr. Smith: You can have anything we have got by mere request."

On the cross-examination of the witness Bonta, Mr. Ryan said: "Well, had you heard all of my question before answering, or did you say 'no' anyway, just on general principles?" Mr. Smith then said: "Well, now, just a moment. I object to that." The court sustained the objection.

We have not recited all of the matters of which defendant complains, but in those we have recited we think plaintiff's counsel is subject to criticism. His insinuation that the opposing counsel had viciously inspired a witness to give an unresponsive answer, his observation at another time in the presence of the jury that opposing counsel was guilty of underhanded tactics, his suggestion that counsel was unfairly going back on an agreement he had made with him and that it would be necessary to start issuing subpoenas in order to obtain the records of the defendant company, and his intimation to the jury that the witness whom he cross-examined was ready at any time to say "No" without understanding the nature of the question put to him, all were unfair reflections upon defendant, upon counsel for defendant and upon the witness in the case, which cannot be justified.

Counsel for defendant was not blameless. In the course of the trial he persisted in getting to the jury the wholly immaterial but prejudicial fact that plain-

tiff after the accident collected insurance on an accident policy on account of injuries received. His reference in the presence of the jury to exhibits not in evidence also deserves criticism. The case was bitterly contested. This extenuates but does not condone. The well-known ability and experience of both attorneys make it impossible to justify these departures from proper practice. It is unnecessary to review cases cited.

For the error pointed out the judgment will be reversed and the cause remanded for another trial.

*Reversed and remanded.*