(No. 20071.—

RAYMOND E. GIDLEY, Defendant in Error, *vs*. THE CHICAGO SHORT LINE RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 23, 1931—Rehearing denied Dec. 2, 1931.*

KNAPP, BEYE, ALLEN, COCHRAN & CUSHING, (JOSEPH L. EARLYWINE, and PAUL R. CONAGHAN, of counsel,) for plaintiff in error.

H. A. BARNHARDT, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

At the hour of 8:40 P. M. on May 9, 1927, a switch engine operated by the Chicago Short Line Railway Company, plaintiff in error, collided with a spout of a coal chute which was also operated by plaintiff in error. Raymond E. Gidley, a switchman, defendant in error, who was in the gangway of the engine, jumped to the ground, sustaining a dislocated semi-lunar cartilage of the right knee. Gidley brought suit against plaintiff in error in the superior court of Cook county under the Federal Employer's Liability act and upon a trial by jury obtained a verdict for $26,000. He remitted $12,000 and judgment was entered in his favor for $14,000. This judgment was affirmed by the Appellate Court, and the case is here on *certiorari.*

Defendant in error, who was about thirty years old, had been in the service of plaintiff in error for about a year previous to the accident and before that had worked for another railroad for about thirteen years. On the day in question his switching crew commenced work at four o'clock in the afternoon, after which time, and before the accident, twenty-two switching movements were made, in

the course of which 109 cars were switched. These movements were all within the State of Illinois. Four of the cars thus handled were assigned to interstate commerce. Just prior to the last switching movement before the accident, the yardmaster, who directed the movements of the engine and its crew in the yard, told the crew to make the movement and then go to lunch. This movement was taking an empty car from the boiler house inside of the yard to the west side of the boiler house inside of the yard, which car was thereafter on May 11, 1927, consigned to Colehour, Illinois. After leaving the car at the west side of the boiler house the engine backed to a main track, along which it proceeded until it came to a switch-track leading south toward the switchmen's shanty, at which place the lunches had been left. Defendant in error threw the switch which let the engine onto this track, signaled for the engine to go ahead, and then got upon the engine and into the cab and got his overcoat to take it to one of the lockers in the switch shanty before eating. The engine moved south at the rate of two or three miles an hour, with the fireman and Gidley on it, where Gidley's duties required him to be when the engine was in motion and he was not engaged in throwing a switch. Along the east side of this switch-track, between the main track and the switchmen's shanty, was the coal chute, thirty-six feet high, twenty-two feet long and sixteen feet wide. This chute had three spouts, facing west, each of which was four feet and six inches long, three feet wide, and had sides tapering from eighteen inches where it fastened to the building to eight inches at the end. Each of these spouts operated on a cable running from the end of each over a sheave, a counterweight on the cable running up and down the side of the chute. The natural position of each spout, when elevated, was at an angle of forty-five degrees. Each could be pulled down by a hook or rod placed in its end by a person standing on the tank of an engine, and when this was done coal

slid by gravity from the chute through the spout and into the tender. The bottoms of these spouts were fastened to the chute about eighteen feet above the ground, and when the spouts were pulled down they extended over the tracks. The collision was with the southernmost spout of the coal chute, which was down. There was a crash, the cab was wrenched from the engine, and the fireman and defendant in error jumped to the ground.

This action is based on the Federal Employer's Liability act, the provisions of which, so far as they are here pertinent, are as follows: "Every common carrier by railroad while engaged in commerce between any of the several States or territories—shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce—for such injury—from the negligence of any—employee of such carrier." By the plain and unambiguous terms of the act and the unanimous decisions of the Supreme Court of the United States and of the courts of last resort of the thirty-nine States before which the question has arisen, it is a prerequisite to liability on the part of a railroad that both it and the employee at the time of the injury be actually engaged in interstate commerce. By judicial construction this term, "engaged in interstate commerce," has been held to mean "engaged in interstate transportation or in work so closely related thereto as to be practically a part of it." *Chicago and Northwestern Railway Co.* v. *Bolle,* 52 Sup. Ct. 59; *Shanks* v. *Delaware, Lackawanna and Eastern Railroad Co.* 239 U. S. 556.

Plaintiff in error contends that at the time of the injury defendant in error was not engaged in an act of interstate commerce or in work so intimately related thereto as to be a part of interstate commerce in any practical sense. It is difficult to lay down a definite rule marking the division line between intrastate and interstate commerce in this class of cases, so as to be able to determine with precision and

exactness in each case as it arises whether the injured employee was or was not engaged in interstate commerce within the meaning of the acts of Congress. To entitle a member of a switching crew in a freight yard to hold the railroad company liable for a personal injury under the Federal Employer's Liability act he must show that at the time of the injury he was engaged in interstate commerce or with its instrumentalities; and this burden is not met merely by showing that in the yard where he was employed cars containing interstate as well as intrastate shipments were handled. *Illinois Central Railroad Co.* v. *Industrial Board,* 284 Ill. 267; *Chicago Junction Railway Co.* v. *Industrial Board,* 277 id. 512; *Birmingham Belt Railroad Co.* v. *Ellenburg,* 104 So. 269, 70 U. S. (L. ed.) 416; *Smith* v. *Chicago, Milwaukee and St. Paul Railroad Co.* 157 Minn. 60, 68 U. S. (L. ed.) 860; *Grigsby* v. *Southern Railway Co.* 3 Fed. 988, 69 U. S. (L. ed.) 1166; *Barber* v. *Davis,* 187 N. C. 78, 68 U. S. (L. ed.) 863; *Coal and Coke Railway Co.* v. *Ewing,* 62 U. S. (L. ed.) 1246; *Lehigh Valley Railroad Co.* v. *Barlow,* 61 U. S. (L. ed.) 1070; *Louisville and Nashville Railroad Co.* v. *Parker,* 165 Ky. 658, 61 U. S. (L. ed.) 119; *Illinois Central Railroad Co.* v. *Behrens,* 58 U. S. (L. ed.) 1051; *Erie Railroad Co.* v. *Welsh,* 242 U. S. 303.

Whether or not an employee is engaged in interstate commerce at the time of his injury depends upon the facts of the particular case, and he may be so engaged at one moment and a few minutes later he may not be so engaged. The question is not what the employee had been doing or what he expected to do but what he was doing at the time he was injured—*i. e.,* whether or not at that particular time he was engaged in interstate commerce or in work so closely related thereto as to be practically a part of it. (*Spencer* v. *Chicago and Northwestern Railway Co.* 336 Ill. 560; *New York Central and Hudson River Railroad Co.* v. *Carr,* 59 U. S. (L. ed.) 1298.) In *Erie*

*Railroad Co.* v. *Welsh, supra,* where a yard conductor on an interstate railway was injured while alighting from a slowly moving freight engine for the purpose of reporting to the yardmaster's office for further orders, having executed all previous orders, it was held he was not employed in interstate commerce so as to render applicable the Federal Employer's Liability act, although the orders which he would have received had he not been injured would have required him immediately to make up an interstate train; that the true test as to whether an injured railway employee was engaged in interstate commerce at the time he received his injuries so as to make applicable the Employer's Liability act was the nature of the work he was doing at the time of the injury, and that the mere expectation that he would presently be called upon to perform a task in interstate commerce was not sufficient to bring the case within the act. In *Lehigh Valley Railroad Co.* v. *Barlow, supra,* a member of a switching crew assisted in placing on an unloading trestle in the railway company's yard, coal cars belonging to such company and loaded with supply coal for it, which, with their contents, had passed over its line from a point outside the State and had remained in the yards upon sidings and switches for several days before removal to the trestle, was held not engaged in interstate commerce within the meaning of the statute. In *Illinois Central Railroad Co.* v. *Peery,* 61 U. S. (L. ed.) 309, it was held that a freight conductor employed on a round trip between two points in the same State cannot be said still to be engaged in interstate commerce within the meaning of the Federal Employer's Liability act because while making his return trip with a train devoted solely to domestic commerce his train on the trip out carried interstate freight. In *Chicago, Burlington and Quincy Railroad Co.* v. *Harrington,* 60 U. S. (L. ed.) 941, it was held that a member of a railway yard switching crew engaged in switching loaded coal cars belonging to the railroad company from a storage track to

a coal shed or chute was not then employed in interstate commerce within the meaning of the Federal Employer's Liability act although the coal thus placed was to be used by locomotives in interstate hauls. In *Wise* v. *Lehigh Valley Railroad Co.* 13 Fed. (2d series) 692, it was held that an employee switching intrastate cars in the yard in a manner not facilitating interstate commerce is not within the Federal Employer's Liability act, and that the marking of an empty freight car, "Return to Copely, Pa.," in the movement of which the brakeman was injured, was not an assignment of such car to interstate commerce.

Where, as in this case, the essential facts are not disputed and a motion is made to instruct the jury to find for the defendant, it becomes the duty of the court to examine the facts and determine whether, when taken with all their reasonable intendments, in the aspects most favorable to the plaintiff, such facts are sufficient to show that at the time of the accident he was engaged in interstate commerce and that his remedy was under the Federal Employer's Liability act. (*Philadelphia and Reading Railway Co.* v. *Hancock,* 64 U. S. (L. ed.) 907.) While from a careful consideration of the hundreds of cases under this act which have found their way to courts of last resort in this country we are of the opinion that no general hard and fast rule can be laid down determinative of the question as to whether or not in a particular case the victim of an accident, whose employment required of him services in both interstate and intrastate commerce, was at the time of such accident engaged in interstate commerce, and that such question must be determined in each particular case by a consideration of the facts thereof, yet we are able to ascertain certain general rules applicable thereto, and that such cases may be divided into two general classes. The first of these classes is where at the time of the accident the employee was not engaged in the active movement of any of the employer's rolling stock, and the second is where the

employee was so engaged. The first class may be subdivided into (1) those cases where the employee at the time of the accident was actively engaged in the performance of some service which directly tended to the furtherance or facilitation of interstate commerce, which includes those where the injured employee was engaged in any employment necessary to the maintenance of any instrumentality essential to the operation of a road in interstate commerce. The Federal Employer's Liability act has been held to apply to employees so engaged. (*Coal and Coke Railway Co.* v. *Deal,* 231 Fed. 604, 62 U. S. (L. ed.) 544; *Industrial Com. of California* v. *Payne,* 66 U. S. (L. ed.) 888; *Louisiana Railway Co.* v. *Williams,* 272 Fed. 439, 66 U. S. (L. ed.) 396; *Philadelphia, Baltimore and Washington Railroad Co.* v. *Smith,* 63 U. S. (L. ed.) 869; *St. Louis, Santa Fe and Texas Railroad Co.* v. *Seale,* 57 U. S. (L. ed.) 1129.) The second subdivision of the first class consists of those cases where the services rendered by the employee in interstate and intrastate traffic were so constantly intermingled that it was impossible at any time to distinguish or classify them as interstate or intrastate, such as a sand-dryer, (*Erie Railroad Co.* v. *Szary,* 64 U. S. (L. ed.) 794,) a flagman at a public crossing, (*Philadelphia and Reading Railroad Co.* v. *DiDonato,* 65 U. S. (L. ed.) 955,) the operator of a signal tower, (*Pennsylvania Co.* v. *Donat,* 60 U. S. (L. ed.) 139, and *Erie Railroad Co.* v. *Collins,* 64 U. S. (L. ed.) 790.) The third subdivision of this class includes those cases where at the time of the accident the employee was not actively engaged in the performance of any service but when injured was at the place of his employment in the course and scope thereof, such as the employee who had not as yet entered upon his duties, (*Lamphere* v. *Oregon Railway Co.* 196 Fed. 336, and *Philadelphia Railroad Co.* v. *Tucker,* 55 U. S. (L. ed.) 607,) or was leaving after the completion of his work, (*Erie Railroad Co.* v. *Winfield,* 61 U. S. (L. ed.) 1057, and *North Carolina Rail-*

*road Co.* v. *Zachary,* 58 U. S. (L. ed.) 591,) to which cases the act has been held to apply. The other subdivision of the first class includes those cases where the injured person was actively engaged in the performance of some service which was not so closely connected with interstate commerce as to be substantially a part of it and to which the act did not apply.

The second class of cases may be subdivided into two classes: First, where the movement of the rolling stock with which the employee is engaged is actually in interstate commerce or directly tends to the promotion, furtherance or facilitation of interstate commerce at the time of the injury, in which case the act applies; and second, where such movement in nowise tends to the promotion, furtherance and facilitation of interstate commerce and is entirely disconnected therewith, in which case the act does not apply.

Employment in interstate commerce begins when a workman on the carrier's premises makes a forward move to serve in that traffic and ends when there is a complete disassociation therefrom. (*Patterson* v. *Pennsylvania Railroad Co.* 284 Pa. 577, 70 U. S. (L. ed.) 780; *Louisville and Nashville Railway Co.* v. *Jolly,* 23 S. W. (2d series) 564, 75 U. S. (L. ed.) 14.) While during his employment on the day of the accident defendant in error had been engaged in twenty-two switching movements involving 109 cars only four of such cars were assigned to interstate commerce, and the movement affecting those four cars had been entirely discontinued and some intrastate switching movements had been made and concluded. The last movement prior to the one in which he was engaged at the time of the accident was concededly an intrastate one. At the time he was injured he was in charge of and piloting a moving engine. That engine was not attached to any car coming from or going to a point without the State of Illinois or laden with merchandise coming from or consigned to a point within the State, nor was it moving to a point

without the State, nor was the movement in preparation for or incidental to the movement of such a car or such contents, and such movement was entirely disconnected from any switching movement in interstate commerce. He was upon the engine in the active performance of his duty in an intrastate movement and incidentally getting his over-coat—an action personal to himself and having no connection with or relation to interstate commerce. He was not engaged in interstate commerce at the time he was injured, and the superior court should have instructed the jury to find in favor of plaintiff in error.

The judgments of the Appellate Court and the superior court of Cook county will be reversed.

*Judgments reversed.*