Arthur Lavigne, Appellee, v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Appellant.

Gen. No. 38,812.

254

O'CONNOR, J., dissenting in part.

Opinion filed November 12, 1936. Rehearing denied November 30, 1936.

M. L. BLUHM and BRUCE S. PARKHILL, both of Chicago, for appellant; C. S. JEFFERSON, of Chicago, of counsel.

RYAN, SINNOTT & MILLER, of Chicago, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, while employed as a switchman by defendant in its Galewood yard in Chicago, took hold of a grab iron on the front end of a freight car; the iron pulled out, throwing him to the ground, injuring him; he brought suit and had a verdict for $45,000; defendant appeals from the judgment for this amount.

The complaint was in two counts. The first alleged that plaintiff, employed by defendant, was engaged in

switching certain cars in interstate commerce and transportation in a switch yard of defendant; that defendant was subject to the Federal Employers' Liability Act, Ill. State Bar. Stats. 1935, ch. 114, ¶¶ 321–329, and the Federal Safety Appliance Acts; that in violation of the appliance acts a grab iron became defective and loose, and by reason thereof plaintiff was thrown from the car and injured.

Defendant answered, denying that plaintiff and defendant were engaged in interstate commerce at the time of the accident.

The provisions of the Federal Employers' Liability Act in so far as they are pertinent are as follows: "Every common carrier by railroad while engaging in commerce between any of the several States or territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." "Engaged in interstate commerce" has been held to mean, "engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Shanks v. D. L. & W. R. Co.*, 239 U. S. 556. It is a prerequisite to liability of a railroad under the Liability Act that both it and the employee be actually engaged in interstate commerce at the time of the injury. *Gidley v. Chicago Short Line Ry. Co.*, 346 Ill. 122.

Were plaintiff and defendant at the time of the accident engaged in interstate commerce as claimed by plaintiff, or in intrastate commerce as claimed by defendant?

The accident occurred shortly after five o'clock p. m. on August 3, 1932; before that time a string of about 27 cars had been brought by another crew from a "wash" track and 18 from another "wash" track to what is called the "staker lead" track; the cars were all empties and had been washed and cleaned on the tracks from which they were brought. Plaintiff was a member of conductor McCloskey's switch crew and

went to work at five o'clock p.m.; his work was to pull out the pin from the cars as they were switched from the lead track onto the switch tracks. The tracks run east and west and the engine was attached to the west end of the 45 cars on the lead track. The conductor, McCloskey, chalked them for the respective switch tracks on which they were to be placed; for the reason that so large a number of cars could not be conveniently handled by the switch engine, the string of cars was cut by McCloskey, leaving about 30 cars attached to the engine and the remaining 15 cars standing on the lead track; the crew then proceeded to switch the 30 cars on their respective tracks as indicated by the chalk marks on the cars; none of these 30 cars was then engaged in interstate commerce.

Plaintiff claims that six or more of the 15 cars standing on the lead track were engaged in interstate commerce; we shall later discuss this.

The crew first undertook to "kick" the last three cars of the 30 onto switch track 15; the engine pulling the 30 cars moved up the lead in a westerly direction, plaintiff riding on the third car from the rear; the engine then backed eastward onto track 15 for the purpose of kicking the easterly three cars onto this track. Plaintiff testified that he was hanging onto the grab iron on the front end of the fourth car with one hand, trying to work the pin lifter on the other car with the other hand, when the grab iron pulled out and he was thrown to the ground, receiving the injuries in question.

There is no conflict in the evidence as to plaintiff's work or duties when he was injured, and the facts established by the undisputed evidence present what was characterized in *Efaw v. Industrial Commission,* 200 Wis. 137, as "a troublesome question of law."

It is not claimed that either the car from which the grab iron was pulled loose or any of the other cars among the 30 were engaged in interstate commerce at

the time of the injury. If the duties of the crew were confined to the handling of these cars there could be no doubt but that defendant and plaintiff were not engaged in interstate commerce at the time.

But plaintiff argues that after the crew had finished switching the 30 cars it would then proceed to the 15 cars standing on the lead and switch them to their respective tracks; that six of these cars were ''carded'' for Linwood, Iowa; that the work of the crew to which plaintiff belonged was the distribution of the entire 45 cars as a unit, including the distribution of the cars carded for a destination outside the State.

Defendant cites a large number of cases stressing the point that it is the nature of the employment at the time of the injury that determines the character of the transportation as interstate or otherwise. In *Illinois Cent. R. Co. v. Peery*, 242 U. S. 292, a conductor on a train engaged in interstate traffic returned on a train in which there were no interstate cars. It was held that he was not at the time of the injury engaged in interstate traffic. In *Erie R. Co. v. Welsh*, 242 U. S. 303, it is said, ''the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. *Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473–478.'' In *Middleton v. Southern Pac. Co.*, 61 F. (2d) 929 (cert. denied 289 U. S. 736) it was held, ''that the work which one is actually doing at the time of the injury, and not the work which he expects to do, determines whether he is engaged in interstate commerce, . . . and that the mere expectation that one previously, but not presently, engaged in such commerce, would in the immediate future return to it, is not sufficient to bring the case within the act. . . . It has been repeatedly held that the true test is the nature of the work actually being done at

the time of the injury, not what the employee might do, or was expecting to do later.'' In *Southern Ry. Co. v. Pitchford,* 253 Fed. 736, the plaintiff was employed in cleaning and icing cars both intrastate and interstate; he was injured while preparing to load ice into a box to be placed in the cars in the course of icing; the first cars he would have iced had he not been injured were interstate cars. It was held that the employee at the time he was injured was not engaged in interstate commerce, the court saying, ''It is immaterial that the plaintiff's last previous work may have been cleaning an interstate car, or that his next work would certainly have been icing an interstate car from the ice box.'' In *Gidley v. Chicago Short Line Ry. Co.,* 346 Ill. 122, the employee was engaged as a switchman in the yard of the defendant, switching both interstate and intrastate cars; his duties required him to ride a short distance on the engine, which struck a spout of a coal chute near the track, and plaintiff was injured. The court held that to recover under the Federal Employers' Liability Act the employee must show that at the time of the injury he was engaged in interstate commerce or with its instrumentalities, and that this was not done by showing that in the yard both intrastate and interstate shipments were handled; that the question was not what the employee had expected to do, ''but what he was doing at the time he was injured—i. e. whether or not at that particular time he was engaged in interstate commerce or in work so closely related thereto as to be practically a part of it.'' The opinion cites a very large number of supporting cases and suggests that the engine on which the employee was riding was not attached to any interstate car at the time of the injury, and held that the plaintiff was not employed in interstate commerce at this time. See also *Erie R. Co. v. Welsh, supra,* and *Illinois Cent. R. Co. v. Behrens, supra,* to the same effect.

Plaintiff, also, cites a number of cases tending to support his theory that the work in which plaintiff was engaged was not confined to the 30 intrastate cars, but also included the remaining 15 cars; that his crew was to break up the entire 45 cars and this first movement of cutting off the westerly 30 cars was the first step in breaking up the entire string of 45 cars; that the operation must be viewed as a whole, citing *Davis v. Dowling,* 284 Fed. 670; *Stottle v. Chicago, R. I. & P. Ry. Co.,* 321 Mo. 1190; *New York C. & H. R. R. Co. v. Carr,* 238 U. S. 260; *Louisville & N. R. Co. v. Parker,* 242 U. S. 13; *Reap v. Hines,* 273 Fed. 88; *Baltimore & O. R. Co. v. Flechtner,* 300 Fed. 318; and Roberts, Federal Liabilities of Carriers, vol. 2, sec. 743. These cases cited by plaintiff are largely concerned with a continuous string or ''drag'' of cars coupled up, some of which are interstate and some intrastate cars; in the process of switching these an employee would be working on one intrastate car and the next car would be interstate. Under such circumstances it might well be held that the employee was engaged in interstate transportation or work so closely related thereto as to be practically a part of it.

In the instant case the 30 cars, upon one of which plaintiff was injured, were wholly separate and apart from the 15 cars remaining on the lead track. It requires a somewhat strained construction to say that plaintiff, while working on this separate unit of 30 intrastate cars, was engaged in interstate transportation because at some later time, when his work on this unit was completed, his crew would switch the remaining 15 cars. At least we find no cases in the books where under such circumstances it has been held that the employee when so injured was engaged in interstate transportation.

Defendant contends that none of the 15 cars on the ''staker'' lead was engaged in interstate transporta-

tion. Plaintiff contends the evidence shows that six of these cars were destined for Linwood, Iowa, and a number for the Continental Can Company to be sent outside the State.

Before the 45 cars were placed on the lead track, and while they were still on the wash tracks, an inspector of defendant inspected them and classified them for commodity loading; he entered in a book a notation showing the class of loading that each car was fitted for; one notation would be, "rough freight loading"; another, "for grain loading," and like notations. Another man following classified the cars for distribution to the switch tracks; cards were attached to the cars indicating their possible use with reference to the character of loading; this man said that when he carded these cars for Linwood, Iowa, he did not know they would go there; that the cars might be sent some place else; that there was a cement plant at Linwood, and the inspector first classified these six cars for Linwood as cars suitable for hauling cement, which the Linwood plant might order; that this meant the cars were to be saved for the cement industry at that place.

There is no evidence in the record that when these cars were carded for Linwood the defendant had any order for cars to be sent there. The general car supervisor testified that the cards were placed on the cars for the convenience of the switching crew, and if there is no order for them they are either carded "hold" or carded so they will move in the general direction of where they may be sent; that no empty car is sent out unless there is issued an "empty car slip bill."

Five of the six cars carded for Linwood, Iowa, were not moved there but were later moved to points in Illinois. Plaintiff contends that one of the cars did go to Linwood, Iowa, and that this characterizes the movement of the entire "drag" of 45 cars as engaged in interstate transportation. After plaintiff was injured

this Linwood car was moved from the lead track onto a switch track; an "empty car bill" was issued when on this switch track; the car was then sent to another switch yard, then to a third track and then to the yard in Bensonville where it was incorporated in a train destined for Linwood, Iowa, which left for that point the day after the accident. Defendant does not make up trains in its Galewood yard.

In *Missouri Pac. R. Co. v. Industrial Commission,* 348 Ill. 355, an empty car was being moved from St. Louis, Mo., to the coal fields of southern Illinois; it was billed under an empty car waybill. It was held that this billing did not confine the trip and use of the car to the terms of the waybill; that in being sent to Illinois the trainmaster was merely anticipating a future need and the car was "drifting"—waiting to be assigned to service. In *Rogers v. Canadian Nat. Ry. Co.,* 246 Mich. 399 (cert. denied 280 U. S. 554), it was held in effect that a movement of empty cars does not necessarily predetermine their use, which may be controlled by the owner road, and that until their use is determined the cars are not engaged in interstate commerce in any movement of them in switching or placing on side tracks in the meantime. *Grigsby v. Southern Ry. Co.,* 3 F. (2d) 988 (cert. denied 268 U. S. 704) held that the fact that one of seven switch cars was subsequently billed as an interstate car does not tend to make the switching operation interstate. See also *Jarvis v. Chicago, B. & Q. R. Co.,* 327 Mo. 428.

Bearing in mind that the carding of these Linwood cars was for the convenience of the railroad, that there were no orders from the Linwood cement plant for empty cars, that any or all of the six cars carded for Linwood could be sent elsewhere and that five of them were so ordered, and that the one car which went to Linwood, Iowa, was not billed for that point until after the accident and did not leave until the following day,

we are of the opinion that at the time plaintiff was injured none of the six cars carded for Linwood was engaged in interstate commerce.

The cars carded for the Continental Can Company were not engaged in interstate commerce at the time of the accident. That company ordered freight cars from the Belt Railway of Chicago, which in turn ordered these cars from several carriers, including the defendant railroad; the cars in question were delivered to the Belt Railway, which delivered them to the Can Company. The traffic manager for the Continental Can Company testified that when he ordered a car he did not know where it would go; that it was the practice of his company, upon receiving empty cars for loading, to load them with cans and place them on "hold" tracks, ready to be shipped out upon receipt of orders; their destination depended upon the orders received; sometimes these cars would stay on the "hold" tracks of the Can Company from ten to twenty days; the witness explained that during the time of the corn pack it was necessary to build up a supply of cars on the "hold" tracks so that when orders came in his company would be able to supply them; one of these cars was thus billed to Big Stone City, Minn., but this was not billed out until August 8, five days after the day upon which plaintiff was injured; another of these cars was loaded and billed out on August 6 to Plattsmouth, Nebraska.

In *Chicago Junction Ry. Co. v. Industrial Board,* 277 Ill. 512, where the switching movement in which plaintiff was injured was of fifteen cars, no particular one or more of them then designed for an interstate shipment, it was held that plaintiff was not engaged in interstate commerce when injured, the court saying that the movement of the string of cars by the switching crew of which plaintiff was a member "was a local movement, and as none of these cars had at that time

been selected to participate in an interstate shipment,'' the employee was not engaged in interstate commerce. To the same effect are *Geraghty v. Lehigh Valley R. Co.*, 70 F. (2d) 300; *Rice v. Baltimore & O. R. Co.*, 42 F. (2d) 387; *Shauberger v. Erie R. Co.*, 25 F. (2d) 297; *Baldassarre v. Pennsylvania R. Co.*, 24 F. (2d) 201; and *Carey v. New York Cent. R. Co.*, 250 N. Y. 345. Cars thus held, subject to possible orders from outside the State, are not engaged in interstate commerce. *Carey v. New York Cent. R. Co., supra,* and cases above cited.

Applying the law announced in the cases cited to the facts before us, we are of the opinion that at the time plaintiff was injured he was not engaged in interstate commerce or transportation or in work so closely related thereto as to be practically a part of it.

Both parties say in their brief that where the essential facts concerning plaintiff's employment are not in controversy it becomes a question of law for the trial court and the question should not be submitted to the jury as one of fact. At the conclusion of plaintiff's case and again at the close of all the evidence defendant moved the court to instruct the jury that plaintiff could not recover under the first count of his complaint. These motions were denied. This was error which calls for reversal of the judgment.

The second count of the complaint alleges that at the time in question plaintiff was employed in switching cars moved by the defendant in intrastate commerce and transportation in its switch yard in the city of Chicago; that therefore plaintiff became subject to the Federal Safety Appliance Acts, that in pursuance of his duties a grab iron became loose and by reason thereof plaintiff was thrown upon the ground and injured. Defendant answered this count, admitting that both plaintiff and defendant were engaged exclusively in intrastate commerce and transportation at the time

of the accident, and averring that the rights of the parties are fixed exclusively by the Workmen's Compensation Act of Illinois, Ill. State Bar Stats. 1935, ch. 48, ¶ 201 *et seq.* Defendant argues that for this reason the second count does not state a cause of action. Four decisions of the Supreme Court of the United States are cited in support of defendant's position in this respect.

*Moore v. Chesapeake & O. Ry. Co.,* 291 U. S. 205, was an action by an employee injured while engaged in intrastate commerce, caused by a violation of the Federal Safety Appliance Acts. After a discussion of the Appliance Acts the court recognized that their violation by defendant caused the injury and gave the plaintiff a right of action, but this right "was left to be enforced . . . according to the applicable statute." *Fairport, P. & E. R. Co. v. Meredith,* 292 U. S. 589, held that the Safety Appliance Acts impose absolute duties upon railway carriers, creating rights in favor of such injured persons as come within their purview, "but the right to enforce the liability which arises from the breach of duty is derived from the principles of the common law." *Gilvary v. Cuyahoga Valley Ry. Co.,* 292 U. S. 57, involved injuries to an employee by reason of a violation of the Safety Appliance Acts while engaged in intrastate commerce employment in Ohio; defendant contended that plaintiff's remedy was under the Ohio State Workmen's Compensation Act; the court sustained this position, holding that while the Safety Appliance Acts prescribe duties of the carrier, the right to recover damages sustained by an injured employee through the breach was "according to the applicable statute," citing cases. The very recent case of *Tipton v. Atchison, T. & S. F. Ry. Co.,* 56 Sup. Ct. 715, involved injury to a switchman in California due to a defective coupling upon a freight car employed in intrastate commerce. It was again

said that the Safety Appliance Acts impose an absolute duty upon an employer and prescribe penal sanctions for the breach. The opinion reaffirmed the rule that these acts leave the regulation of any action to recover damages to the law of the State where the injury occurred. The opinion went on to say that California, where the accident happened, was at liberty to afford any appropriate remedy for breach of the Safety Appliance Acts, and that she might, as she had done, prescribe workmen's compensation in lieu of a common law or statutory action for disability for breach of the duty imposed.

Plaintiff cites *Kenna v. Calumet, H. & S. E. R. Co.*, 284 Ill. 301, and *Anderson v. Chesapeake & O. Ry. Co.*, 352 Ill. 561, as holding that an employee injured in intrastate commerce has, by reason of the Safety Appliance Acts, a common law right of action, exclusive of the State Compensation Act. It must be conceded that these cases are in point. However, an examination of the opinions in these cases shows that they rest upon the assumption that a violation of the Federal Safety Appliance Act gives the employee a right of action. In fact, virtually this language is found in the *Anderson* case. But examination of the decisions of the Supreme Court of the United States, above cited, shows clearly that, as construed by that court the Safety Appliance Act did not give a right of action to an employee. While prescribing certain duties of the employer, it did not attempt to lay down rules governing actions for enforcing rights, and such rights are left to the local State law where the injury was suffered. Where there is a conflict between the State courts and the Federal courts as to the interpretation of a Federal statute, the Federal courts will prevail.

The Illinois Workmen's Compensation Act (Ill. State Bar Stats. 1935, ch. 48, ¶¶ 201–236) is in lieu of

the common law action for disability arising from a breach of the duty imposed by the Federal Safety Appliance Act in intrastate commerce. By section 6 of the act it is provided that no common law or statutory right to recover damages for injury sustained by any employee while engaged in the line of his duty ''other than the compensation herein provided, shall be available.'' By section 3, subpar. 3, the act is made automatically applicable to common carriers, and in *Hochspeier v. Industrial Board,* 278 Ill. 523, and *Goldsmith v. Payne,* 300 Ill. 119, it was recognized that common carriers are automatically subject to the act.

Plaintiff argues that the *Kenna* and *Anderson* cases must be understood as interpreting the Illinois Compensation Act so as to exclude from its operation employees of interstate railway carriers who may sustain injuries caused by violation of the Federal Safety Appliance Act. We do not so read these opinions. In *Faber v. Industrial Commission,* 352 Ill. 115, decided after the *Kenna* case, it was held in broad terms that the Workmen's Compensation Act takes the place of the right at common law and takes away all such causes of action from an employee. No exception is made in favor of an employee injured by reason of a violation of the Safety Appliance Act.

It follows from the cases latest decided by the Supreme Court of the United States that as plaintiff was engaged in intrastate commerce at the time he was injured by reason of the violation of the Safety Appliance Acts, his only remedy is under the Workmen's Compensation Act of Illinois.

At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence defendant asked the court to instruct the jury to find for the defendant as to this second count. This motion was overruled. This was reversible error, as under the Supreme Court

cases above cited the second count did not state a cause of action.

Defendant presents certain alleged errors with reference to instructions given to the jury and rulings on the admissibility of evidence. We do not think it necessary to discuss these except to note that in our view of the case the giving of instructions submitting to the jury the second count of the complaint was reversible error.

Defendant argues that the verdict of $45,000 is so excessive as to indicate it was the result of passion and prejudice on the part of the jury. There is impressive evidence supporting this point.

Plaintiff testified that when the grab iron came loose he fell against a switch stand and for a time was unconscious; he walked about 200 feet to an automobile and was taken to a hospital; on examination the surgeon found on his left side a superficial abrasion about one-half inch in diameter and a similar abrasion on the left arm near the wrist; X-ray pictures were taken, with negative results; plaintiff complained of soreness in his back but the attending physician was unable to find any objective signs of injury; he was brought to the court room in a wheel chair; it is claimed that he is "utterly paralyzed." There was testimony that he had no organic lesion but was suffering functionally. Several doctors thought he was suffering from hysteria and that the disposal of this litigation would have a tendency to cure his condition.

As we are of the opinion that plaintiff cannot maintain either of the counts of his complaint, we make no further comment on his physical condition or the amount of the verdict.

For the reasons stated the judgment is reversed.

*Reversed.*

MATCHETT, P. J., concurs. O'CONNOR, J., dissents in part.

### Dissenting Opinion.

Mr. Justice O'Connor dissenting in part:

I agree that the judgment in this case should be reversed because, under the instructions of the court, the jury was authorized, if it found there was a violation of the Federal Safety Appliance Act, that plaintiff might recover. The Supreme Court of the United States holds that the Safety Appliance Act does not create a cause of action, but where its provisions have been violated the right to recover is "according to the applicable statute" of the State. *Moore v. C. & O. Ry. Co.,* 291 U. S. 205; *Fairport R. Co. v. Meredith,* 292 U. S. 589; *Gilvary v. Cuyahoga Valley Ry. Co.,* 292 U. S. 57; *Tipton v. Atchison, T. & S. F. Ry. Co.,* 56 Sup. Ct. 715. Some years before these opinions were rendered by the United States Supreme Court, another division of this court, of which I was then a member, held that where an employee was injured on account of the violation of the Federal Safety Appliance Act, he might recover against his employer, the railroad company, and that our State Workmen's Compensation Act did not apply. *Kenna v. Calumet, Hammond & So. Ry. Co.,* 206 Ill. App. 17 (affirmed, 284 Ill. 301) but "the decisions of the Federal courts upon this Federal statute, regardless of any decisions or views of the state court upon that subject" control. *Day v. Chicago & N. W. Ry. Co.,* 354 Ill. 469. In the *Tipton* case the court said (p. 716): "The Safety Appliance Acts modify the enforcement, by civil action, of the employee's common law right in only one aspect: namely, by withdrawing the defense of assumption of risk."

I am, however, of opinion that under the evidence in the instant case, the question whether both plaintiff and defendant were engaged in interstate transporta-

tion or in work so closely related to interstate transportation as to be a part of it at the time of the accident, was properly submitted to the jury. The jury might properly find that although there was no dispute in the evidence as to the task which plaintiff and the train crew, of which he was one, were performing at the time in question, yet different inferences might legitimately be drawn from such evidence, but it was the jury's function to draw such inferences. In *Moore v. Rosenmond,* 238 N. Y. 356, where different inferences might legitimately be drawn from the evidence, one of which showed liability and the other that there was no liability, it was said that the question was for the jury to draw the inferences. Judge Pound in delivering the opinion of the court said (pp. 359, 360): ''They might, on the other hand, if they drew from the testimony the inferences most favorable to defendant, have found that Dollar had abandoned his employer's business when he picked up Corbin at the Eighty-fifth street garage and that the time was then devoted to a personal spree, until a belated sense of duty inspired them to start back to the garage. It was, however, for the jury to draw the inferences.''