Anna Deman, Administratrix of the Estate of Adolph Deman, Deceased, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 39,673.

Opinion filed March 16, 1938.

JOHN W. FREELS and HERBERT J. DEANY, both of Chicago, for appellant; E. C. CRAIG, V. W. FOSTER and C. A. Helsell, all of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellee.

MR. JUSTICE HALL delivered the opinion of the court.
On January 8, 1937, plaintiff, as administratrix of the estate of Adolph Deman, deceased, obtained judgment against defendant for the sum of $9,000, upon the verdict of a jury, from which judgment this appeal is prosecuted. In the declaration filed on November 7, 1930, it is charged that on October 3, 1930, the day plaintiff's intestate met his death, defendant was a railroad corporation, employed in interstate commerce, and that the decedent, while in the employ of defendant and while engaged in work in connection with interstate commerce, through the negligence of defendant, was killed.
While a number of questions are presented to us for consideration, the principal and pertinent question is, whether or not, on the day in question, decedent was engaged in interstate transportation, and whether

the plaintiff has established such fact by the weight of the evidence. The record indicates that at the time decedent met his death on October 3, 1930, he was employed by defendant as a carpenter's helper, and that he had nothing to do with the movement of trains.

A carpenter named Brown, a witness for plaintiff, testified to the effect that on the day in question, the witness was temporarily acting as carpenter foreman for defendant at 27th street and the Illinois Central tracks in Chicago; that the day before the accident, the decedent helped the witness to assemble a smokejack in a stall of the north roundhouse, in which there were 18 or 19 stalls; that two of the stalls in the roundhouse were used in washing out and repairing Illinois Central engines; that there were two roundhouses adjacent to each other, and that road engines did not come into the roundhouse where the decedent was employed; that the suburban service on the road in question had been electrified, and that suburban engines did not come into this roundhouse, and that to the witness's knowledge, no passenger engines came into it; that the roundhouse is small, and the turntable is used for turning Michigan Central engines, such engines being switch engines, which come into a roundhouse after switching around the yard and down the tracks; that two of the 18 stalls were used as a paint shop; that on the day of the death of the decedent, "We were working on the smoke jack for stall 12. The old smoke jack broke down or rotted away and we were building a new one to put in the old stall. Mr. Deman worked on the smoke jack on October 2nd, the day before he was killed. It had been started about a month before." This witness also testified to the effect that the other stalls were used by the different locomotives that were being repaired by the employees, and that he last saw Mr. Deman on the morning of the accident at about twenty minutes to eight,

when the witness talked to him. He also stated that shortly thereafter he was informed that Mr. Deman had been killed; that the witness went out and found the body lying between the rails of the main lead track, which is about 25 or 30 feet south of a coal chute, and that he noticed that the dirt between the tracks was scraped up to the extent of about 10 or 15 feet; that each stall in the roundhouse has a separate track leading into it through a double door, through which the locomotives go in; that he heard an engine go by approximately 3 minutes before he found Mr. Deman, and that while he did not recall hearing any bells ringing, he did notice the noise of the operation of the locomotive; that the engine in question was operated by a man named Sykes; that the engine was going south, and that Sykes was in the cab hanging out of the window, and that after the witness saw the engine pass, he saw Mr. Deman's body; that the engine he saw was a Michigan Central engine, and that when he saw it, it had completed a turn around the north end of a coal chute, and straightened out on a track, and that Deman was lying about 30 or 35 feet south of the coal chute.

Robert Sykes, the man mentioned by the former witness as having had charge of the engine, was produced by plaintiff, and he testified to the effect that at the time in question, he was a hostler, and that "I took engines to the roundhouse, took them in and out of the roundhouse and on the cinder pit. I didn't do any of the work on the engines myself. I am not a licensed engineer, and do not operate trains or do switching, but I do operate engines in the yard." He testified that "the engineer was in the engine at the time. I was going to back it down to the roundhouse and turn it around on the turntable so it could go out on another train. I don't know where the engine came from. I don't know the name of the engineer.

The engine stopped and I got up to the engineer's seat. The engine was headed north and I drove it south. The bell was turned off when I got on the engine, but the steam was up." He further testified to the effect that as he went around a curve, the top of a tank and coal pile thereon were higher than the witness was from the engineer's seat, and that he could not see over this tank and ahead on the track; that he could not see the rails on which he was driving from where he sat, until he got around the curve, and that he went around the curve at the rate of 5 miles an hour; that he did not see Deman; that he put the engine on a turntable and came back in about 5 minutes, and that a man named Wagner called his attention to the fact that Mr. Deman was lying on the track, dead. This witness stated that he could not recall whether the bell on the locomotive was ringing at the time, but that if it was, he could not hear it because the machines at the sand pit and coal chute both made a loud noise. The engine in question, was a switch engine.

An employee named Wagner testified to the effect that he was a machinist, employed by the defendant at the roundhouse in question; that he saw Deman on the morning in question as Deman was walking down the tracks, where he was found; that Deman had no tools, and that when the witness saw him, he was walking between the rails, and that he was then just north of the coal chute, a distance of 15 or 20 feet, and 50 or 60 feet south of the carpenter shop; that at the time he saw Deman, he did not see any locomotive on the track mentioned, nor did he hear any bells ringing; that he heard a lot of other noises, because it was a noisy place on account of the shaking of grates to knock out fires, the movement of rods and machinery which operates the coal chute and the buckets in the coal chute.

George F. Hankey testified to the effect that he had been employed by the defendant for 14 years as a building foreman, with headquarters at 26th street, and that his duties took him to the roundhouse referred to; that in October, 1930, "they" were fixing up a smokejack to put in one stall; that Deman had worked for him for over a year, and was often in the carpenter shop at 27th street; that when Deman worked in the roundhouse he would report there in the morning, and that during that year, he worked out of the carpenter shop once or twice a week, and that he also worked in the carpenter shop across the tracks; that during the cold months in the winter, he worked as a watchman at the 26th street carpenter shop directly across the street from the roundhouse. This witness also testified to the effect that he had checked over his records for the months of September, October and November, 1930, with reference to the work done on the smokejack referred to; that the old smokejack was taken down during the first part of September, 1930, and that the men worked on the new one during September; that when the men had nothing to do, they would work on this smokejack, which was finally finished in November, 1930, when the roof was put on it. On cross-examination this witness stated, in substance, that during the year mentioned, and prior to the time Deman worked on the smokejack, Deman had done carpenter work on buildings, roundhouses and depots, and renewed boards on suburban platforms of different stations where the electric trains stopped, but that the witness did not know whether or not Deman ever worked at platforms where the South Shore trains came from South Bend, Indiana; that during the time mentioned, and prior to the time he worked on the smokejack, Deman had mixed concrete for street pavings at crossings, and had also done carpenter work at planked crossings, but that there were

no planked crossings on the terminal; that so far as the witness remembered, Deman had never worked in the coach yard. This witness stated that Deman would come under the maintenance-of-way department.

John Collins, an employee of the carpenter department of the defendant railroad, testified that Deman had worked for him for 9 years prior to his death. This witness described the smokejack already referred to, and the work done in connection with its construction. His testimony was further to the effect that for the 9 years mentioned, his crew was supposed to take care of the roundhouse and shop, and were also put to work fixing platforms on the suburban system. This witness stated that the decedent had nothing to do with the movement of engines or trains.

It seems to be admitted by plaintiff that unless decedent, at the time of his death, was engaged in interstate commerce, even though he met his death through the negligence of the defendant, plaintiff cannot recover here.

In *Baltimore & O. C. T. R. Co. v. Industrial Commission*, 366 Ill. 223, where an employee of the railroad had been run over and killed by one of its trains, and a hearing was had before the Illinois Industrial Commission on the question as to whether or not compensation should be paid under the Workmen's Compensation Act, the question arose as to whether or not claimant, at the time of his death, was engaged in interstate commerce. The commission found that the decedent was not so engaged, and that, therefore, the railroad was required to pay compensation under the Illinois act. On appeal, the finding of the Industrial Commission was affirmed, and the court said: "The true test is whether at the time of the injury, the employee was engaged in interstate transportation, or in work so closely related to it as to be practically a

part of it. (*Shanks v. Delaware, Lackawanna and Western Railroad Co.,* 239 U. S. 556.) The mere expectation that the employee would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the Federal Employers' Liability act. *Erie Railroad Co. v. Welsh,* 242 U. S. 303; *Illinois Central Railroad Co. v. Behrens,* 233 U. S. 473.''

In *Day v. Chicago & Northwestern Ry. Co.,* 354 Ill. 469, an action was brought in the circuit court of Peoria county by an employee of the Chicago and Northwestern Railroad Company to recover damages for personal injuries alleged to have been sustained by him while in its employ. The declaration in that case charged, in substance, that the plaintiff was employed in the shops of the defendant company at South Pekin, Illinois, and that the railroad company was engaged in interstate commerce and subject to the provisions of the Federal Employers' Liability Act; that on February 21, 1929, plaintiff was working on a locomotive of the defendant company which had been used in interstate commerce, and which defendant, after making repairs thereon, intended to return to and engage in interstate commerce, and while so working upon the locomotive, plaintiff was injured through the negligence of defendant by one of its servants, by which he lost his right arm. Issues were joined on the plea of the general issue, and after a trial, a verdict was returned in favor of plaintiff. A motion with appropriate instructions to direct the court to find for the defendant, were presented to the court at the close of all the evidence, which was denied. Judgment was entered on the verdict, and on appeal to the Appellate Court, the judgment was reversed, and on appeal to the Supreme Court, the judgment of the Appellate Court was affirmed. In commenting upon the facts, the Supreme Court in that case stated that the loco-

motive in question was sent to .the shops of the defendant company in South Pekin on February 14, 1929, where heavy repairs were made on it, and that it was in the roundhouse there until March 16, 1929, on which date, the repairs being completed, the locomotive was taken on a trial trip; that from February 14th until March 16, 1929, the locomotive was incapable of being used in transportation; that plaintiff, a machinist in the employ of the defendant company, while attempting to replace a radius bar on the right side of the engine, got the bar caught and was unable to release it, and while attempting to release the bar for the purpose of putting it in place, another employee of the defendant, knowing nothing of the situation, started a cylinder-boring bar in operation, and that the vibration which shook the radius bar loose, caught the defendant's hand and injured it. From the statement of the court, we gather that the evidence further showed that the plaintiff was ordered to work on the locomotive by his foreman, who told him that the locomotive, after being repaired, would be put back on its regular run, which was in interstate transportation. In holding that the employee in that case could not recover, the Supreme Court said:

"Not every employee of an interstate carrier is engaged in interstate commerce, and the burden is upon the plaintiff who charges in his declaration that he comes within the provisions of the Federal Employers' Liability act to prove such allegation. (*Chicago and Alton Railroad Co. v. Industrial Com.,* 290 Ill. 599; *Illinois Central Railroad Co. v. Industrial Board,* 284 id. 267.) The correct test in determining whether the plaintiff comes within the provisions of the Federal act is whether he was, at the time he was injured, engaged in the work of interstate transportation or some branch of endeavor so closely. connected with it that it was for all practical purposes a part of such work.

There is no dispute in the evidence as to the instrumentality upon which the plaintiff was working at the time he was injured or the character of the work in which he was then engaged. There is a broad distinction between the application of the rule to fixed objects, such as bridges, tracks and road-beds used in interstate transportation where the employee is injured, and a machine that may or may not be used in interstate transportation and by means of which instrumentality the employee is injured. The locomotive, at the time the plaintiff was hurt, was an inactive object, incapable of moving or traveling under its own power. While it is true that at the time the locomotive came into the roundhouse it had been used in interstate transportation and was expected to be returned to interstate transportation, yet that fact, under the rule stated, is not sufficient in itself to make it an instrumentality of interstate transportation at the time the plaintiff was maimed. The case presented is not a case in which a locomotive is pulling a train in interstate transportation and while on such trip an accident happens to the locomotive and it is repaired en route so that it may complete the trip, but in the case at bar we have a locomotive that at the time the injury happened to the plaintiff was not engaged in transportation of any kind but was unable to transport anything whatsoever. It then had no tractive power.'' See also, *Lavigne v. Chicago, M. St. P. & P. R. Co.*, 287 Ill. App. 253.

In the instant case, while there is some suggestion that plaintiff's intestate, at various times previous to the time in question, had been engaged in repairing various station platforms and doing other carpenter work along the railroad line of the defendant company, in and about the yards, there is not a scintilla of evidence to prove that at the time of the accident, which resulted in his death, he was engaged in any

work in connection with interstate commerce. From a review of the cases, including those cited in this opinion, we conclude that, because of the fact that a man is employed by a railroad company, no presumption is raised that he was engaged in interstate commerce at the time he may have suffered an injury. On the contrary, from the statements of the Supreme and Appellate Courts in their opinions in the cases cited, we conclude that the rule is that the burden is upon the person seeking to establish that fact, to prove by a preponderance or greater weight of the evidence, that he was so engaged. We are further of the opinion that, in the instant case, plaintiff has wholly failed in this regard. Therefore, the judgment of the circuit court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.